# EXHIBIT C
## To Declaration of Alex S. Trepp

1

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

ROBERT R. PRUNTY, JR.
427 WEST HICKORY STREET
ARCADIA, FLORIDA  34266
863.991.5195

**PLANTIFF**                                CASE NUMBER: 1:14-CV-02073


vs.                                         JUDGE:  AMIT P. MEHTA


VIVENDI, INC., et al
                                            **A CIVIL ACTION FOR:**
**DEFENDANT(S)**

                                            **13TH AMENDMENT VIOLATIONS**

                                            **COPYRIGHT INFRINGEMENT**

                                            **42 U.S.C. 1982 & 42 U.S.C. 1985(3)**

                                            **FRAUD UPON THE COURT &**

                                            **FRAUDULENT CONCEALMENT**


**FIRST AMENDED COMPLAINT AS OF COURSE**

RECEIVED
Mail Room

FEB - 5 2015

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## JURISDICTION AND VENUE

1.) This Honorable Court has Jurisdiction of this case pursuant to Article III of the United States Constitution, The 13th Amendment of the U.S. Constitution, The United States Copyright Act, 17 U.S.C. 101 et seq., 28 U.S.C. 1331, 28 U.S.C. 1338, 42 U.S.C. 1982, 42 U.S.C. 1985(3), 28 U.S.C. 1391, and 28 U.S.C. 1400(a).

## PARTIES

2.) Plaintiff, Robert R. Prunty, Jr., is an African American Producer/Composer/Lyricist and former Business Owner of YoWorld Music Company and Rowdy City Records, of Baltimore, Maryland. Plaintiff currently resides in the State of Florida with his wife and children. Plaintiff has not published any songs since 2010. *(**For 13th Amendment Standing purposes, Mr. Prunty is a direct descendant of African Slaves hailing from the Slave Plantation in Bluemont/ Bluefield Virginia belonging to Mr. Robert Prunty, (Deceased Slave Owner of same name)).*

3.) Vivendi Inc., is a multi-national corporation based in Paris, France and doing business in New York City. Vivendi Inc., is the Parent company of Universal Music Group (UMG) and Island/Def Jam Recordings. Vivendi, Inc. and it's Board of Directors are being sued in an Individual and Official Capacity.

4.) Universal Music Group is a subsidiary of Vivendi and also a multi-national corporation doing business in New York and the World. (UMG) is a Delaware Corporation. UMG and it's Board of Directors are being sued in an Individual and Official Capacity.

5.) Atlantic Recordings, Inc., is a multi-national record company, doing business in New York and the World. Atlantic is a Delaware Corporation. Atlantic's Board of Directors is being sued in an Individual and Official Capacity.

6.) Island/Def Jam Recordings is a subsidiary of Vivendi and is a Delaware corporation doing business in New York and the World. Island/Def Jam's Board of Directors are being sued in an Individual and Official Capacity.

7.) Warner Music Group, Inc., is an international record company doing business in New York and the World. Warner is a Delaware corporation. Warner and it's Board of Directors are being sued in an Individual and Official Capacity.

8.) Jenner & Block, LLP is a multi-national Law Firm doing business in New York and the World. Jenner & Block is a Delaware corporation. Jenner & Block and it's Board of directors are being sued in an Individual and Official Capacity.

9.) Mr. Michael DeSanctis is an individual Attorney employed by Jenner & Block, LLP. and doing business in the District of Columbia. Mr. DeSanctis is not being sued in any capacity except a vicarious one.

10.) Mr. Paul Friedman is a United States Federal Judge who is not being sued in any capacity. Mr. Friedman is also an avid investor in specialized and vast Vivendi corporate interests, such as "LongLeaf Partners", Third Avenue Value", "Loomis Sayles Investments", American Funds EuroPacific Growth", "Morgan Stanley", "Vanguard Long Term Tax Exempt Fund", "Mutual Beacon Fund", "iShares Russell 200 Value Index Fund", "T. Rowe Price Equity Income", "First Eagle Global" & "American Beacon".

## STATEMENT OF THE CASE

11.) In or about beginning in October 2003 until May of 2005, Plaintiff and his company were clients of the now defunct UMG company known as "Inside Sessions". "Inside Sessions" was an "Internet Company" which sought out aspiring producers/songwriters and composers of

original songs, under the guise of critiquing these songs in order to make the unknown producers/songwriters eventually become money earning artists, realizing their true potentials.

12.) Plaintiff's fledgling company, YoWorld Music, aka Rowdy City, created, owned and managed by the Plaintiff, were quite motivated by the "Inside Sessions" critiques of the labels music. Plaintiff was so elated that he eventually sent "Inside Sessions" nearly (300) three-hundred original songs belonging to YoWorld. The Inside Session executives in turn, sent song-by-song comparisons to the Plaintiff's company which were well appreciated at the time. However, during the years of 2003, 2004 and 2005 especially, Plaintiff began to hear the same lyrical and musical expressions of YoWorld being employed by artists belonging to the several above named defendants. Plaintiff then filed suit, heretofore known as Case 1:06-cv-0480 or Prunte' v. UMG.

13.) Suit was filed in the United States District Court of the District of Columbia, on or about March 15th 2006 and Judge Paul L. Friedman was assigned as the Judge in the case. Attorney Michael DeSanctis ironically became the "lone attorney" in the case, and filed it's Corporate Disclosure Statement on May 19th 2006, which was not a "disclosure" but instead a "request" for any parties having interests in the case to make them known. At no time did Mr. DeSanctis exercise his duty to inform the parties about the **(11) eleven** highly suspect and full of impropriety Friedman/Vivendi financial interests according to the **Rules of the Model Code of Professional Conduct, namely: 1.10—3.3—3.4—4.1—4.3—8.3—& 8.4,** respectively.

14.) Plaintiff alleged in its complaint that the defendants, during the **"Inside Sessions Song Harvesting Operation",** unlawfully used **(20) twenty** of its original songs which were previously and voluntarily sent to UMG/Inside Sessions. Plaintiff claimed that the titles of many of the alleged infringing songs were identical, (as is evidenced by the instant Copyright action regarding "Keys to the Kingdom" and defendants "Kingdom").—and all songs are likewise twisted around to create similar unlawful derivatives of Plaintiff's Copyrighted works.

15.) (15) fifteen days after the Complaint was filed, Judge Paul Friedman issued an Order directing Plaintiff to travel from it's Baltimore, Maryland residence, to the District of Columbia Federal Courthouse, under the guide of "Setting/Resetting Hearings" regarding a "Status Conference". This Meeting or Status Conference of Judge Friedman occurred on March 30th 2006, (15) fifteen days after the case was filed.

16.) After the strange and ultimately bogus "status conference", where the Judge merely wanted to view the **"Racial Complexion"** of the Plaintiff, Plaintiff was fraudulently forced to play "Judicial Charades" as the Attorney DeSanctis merely pretended to be a legal combatant, while full knowing of the Judge's pre-disposed intent to intentionally deprive Plaintiff of it's Song Properties, ruthlessly forcing Plaintiff to wait (5) five agonizing years, merely to hear Mr. Friedman declare that **NOT ONE** of the (20) twenty songs complained about, were even remotely or substantially similar to Plaintiff's songs.

17.) The **"Half a Decade Later"** decision of Mr. Friedman became final and unchangeable Law, on or about May 12th 2011. nearly (5) five years to the day that Mr. Judge Paul L. Friedman arbitrarily decided to drag Plaintiff across State lines to inquire merely to see face to face, the Race of Plaintiff, before proceeding upon the herein complained of unlawful Courses of Conduct described by this Complaint.

18.) After so many years of undergoing a bogus litigation, admittedly, Plaintiff had a lingering gut feeling that the Judge had to have had some type of financial interest with Vivendi/UMG since he totally ignored Plaintiff's Right to Make Derivative Works. However, at that time there was no available evidence of Official Judicial Financial Collusion with the several Defendants that surfaced as a result of Plaintiff's intensive due diligence of searching the Internet since 2011.

19.) It wasn't until October of 2014 that Plaintiff's due diligence located Official Internet

releases of Judge Friedman's vast lines of Vivendi/UMG based Financial Interests, which obviously compelled Mr. Judge Paul L. Friedman to literally force Plaintiff to also serve these same interests of the several Defendants in the case, for over (5) five years, merely to unlawfully **take** Plaintiff's Copyrighted Property and to further intentionally deprive Plaintiff of his Constitutional Rights under the 13th Amendment. This action thereby ensued.

## COUNT ONE:
## 13TH AMENDMENT VIOLATIONS

20.) In conjunction and accord with the above statement of facts, the herein named Defendants are all implicated in violations of the 13th Amendment to the United States Constitution. The 13th Amendment provides, in pertinent part that:

*Section One:*

**"NEITHER SLAVERY, NOR INVOLUNTARY SERVITUDE, EXCEPT AS PUNISHMENT FOR CRIME WHEREOF THE PARTY SHALL HAVE BEEN CONVICTED, SHALL EXIST WITHIN THE UNITED STATES, OR ANY PLACE SUBJECT TO THEIR JURISDICTION.**

*Section Two:*

**CONGRESS SHALL HAVE THE POWER TO ENFORCE THIS ARTICLE BY APPROPRIATE LEGISLATION.**

21.) Plaintiff further alleges that the above named Defendants, all of them, knew or should have known that taking Plaintiff's property in the above described manner, could be construed as violative of Plaintiff''s Constitutional Rights under the 13th Amendment, and other Federal Statutes,since Plaintiff had no control or recourse at the hands of the above named Defendants. Instead, Plaintiff was forced to allow Defendants to unlawfully profit from Plaintiff's Original

and Copyrighted Song Properties for over (5) five years, merely to cause Plaintiff to "Involuntarily Serve" the interests of the Defendants, which is and was merely to ultimately own all or most songs that Originally belonged to this Plaintiff, by unlawful actions of a secret Federal Judge Business Partner alliance.

22.) Plaintiff hereby seeks Judgment against the above named Defendants due to the enormous efforts to force Plaintiff to, for years, "involuntarily serve" the financial and corporate interests of the Defendants, merely to eventually and literally take Plaintiff's Song Properties for all time, howbeit unlawfully. Aside from reverting ownership of the complained of expressions back to the Plaintiff, Judgment sought is due for an accounting based upon the time of Defendants unlawful usage of Plaintiff"s works. Punitive damages are likewise being sought, and such hearing should be designed to fully address the potential legal consequences of the complained of conduct regarding Plaintiff's ***(20) Twenty*** song properties.

## COUNT TWO:
## INTENTIONAL AND DIRECT COPYRIGHT INFRINGEMENT

23.) Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above. For purposes of Intentional Copyright Infringement, the defendants of this Count include, but are not limited to: Def Jam Music Group, Universal Music Group and Vivendi Corporation, under theories of Joint and Vicarious Liability.

23. a.) Obviously, UMG is still under the impression that they can literally "take" Plaintiff's Original Songs" with no repercussions, due to their strong belief that their "Secret Federal Judge" will eventually free them from any and all liability. Such sinister faith is hereby declared to be misplaced.

24.) Plaintiff is the original creator and performer of the Urban song known as **"Keys To The Kingdom"**, and has been the owner of such exclusive copyrights since on or before 2002, and such lyrics and music are included herein and designated as "Plaintiff's Exhibit A". —Exhibits here are shown as relation back items of the Docket/Record in this case—-Subsequently, the song "*Keys to the Kingdom*" was reproduced by the defendants as an unauthorized, unlawful derivative work, and publicly performed by the artist known as "**Common**".

25. Defendant, Def Jam Music Group, a subsidiary of Universal Music Group, has allegedly, and in May of 2014 released a "Derivative Version" of Plaintiff's Copyright protected song **"Keys to the Kingdom"**, and have performed through the artist "COMMON", this derivative version, entitled **"Kingdom"**, but expressed as **"Keys To The Kingdom"**, describing both songs as being about an urban youth asking God Almighty to reveal the secrets of survival and success. Plaintiff deems such similarities to be beyond mere consequence and the result of unlawful copying.

26.) Plaintiff's song, **"Keys To The Kingdom"** is registered as a part of Plaintiff's collective works, numbering over (250) two-hundred and fifty original songs. *(See: Collective Works Of Robert R. Prunty, Exhibit B)*.

27.) Among the exclusive rights granted to Plaintiff, under the Copyright Act are the Exclusive Rights to make and prepare *"Derivative Works"* for reproduction and to distribute the resultant copyrighted recordings to the public.

28.) Direct access to Plaintiff's Collective Works most likely occurred while Plaintiff was being previously duped by Universal Music Company to send in songs via it's now defunct "Inside Sessions Music Program". *(Judicially Notice Case 06-0480, proof of access)*.

29.) Another possible avenue of "Direct Access" to Plaintiff's Copyrighted work, "Keys to the Kingdom", would be by way of an interview had between Baltimore Radio Station 92 Q and DJ Reggie Reg in 2003, where the song was played several times over the public airwaves.

30.) Plaintiff is furthermore informed and hereby believes that defendant Def Jam Recordings and UMG, without the permission or consent of Plaintiff, have used and continue to use, a derivative version of Plaintiff's copyrighted work known as **"Keys To The Kingdom",** and unlawfully distributes the derivative version to the public, and making the derivative version of **"Keys To The Kingdom"** available for distribution to others in the general public.

31.) In doing so, the Defendants have violated Plaintiff's exclusive rights to make and prepare derivative works of it's original creations as well as to distribute these creations to the Public.

32.) Plaintiff is furthermore informed and believes that the foregoing acts of intentional Copyright Infringement have been willful and intentional, with total disregard of and with complete indifference to the exclusive rights vested in the Plaintiff.

33.) As a result of Defendants infringement of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. 504(c) for Defendants willful and intentional infringement of each of the Copyrighted Recordings. Plaintiff is further entitled to it's attorney's fees and costs pursuant to 17 U.S.C. 505.

34.) The aforementioned conduct of defendants is causing and, unless enjoined and restrained by this Honorable Court, will continue to cause Plaintiff great and irreparable injury that cannot be fully compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's Copyrights, and ordering Defendant to destroy all copies of sound recordings made in violation of Plaintiff's exclusive rights.

**WHEREFORE,** Plaintiff prays for judgment against the defendants as follows"

a.) For an Injunction providing:

35.) Defendants shall be permanently enjoined from directly or indirectly infringing Plaintiff's right to make Derivative works of it's original creations in the Copyrighted Recordings of "Keys to the Kingdom", and any sound recordings, whether now in existence or later created, that are owned or controlled by Plaintiff, including without limitation, any of Plaintiff's songs whether released on the Internet or directly to the Public, and for statutory damages for each infringement of each Copyrighted derivative work of **"Keys To The Kingdom",** pursuant to 17 U.S.C. 504, and for Plaintiff's costs in this action, and for Plaintiff's reasonable attorneys' fees incurred herein and for such other and further relief as this Honorable Court deems just and proper.

## COUNT THREE:
## INTENTIONAL FRAUD UPON THE COURT MERELY TO OBSTRUCT THE DUE ADMINISTRATION OF JUSTICE—UNLAWFUL ACTIVITY DIRECTED AT THE MACHINERY & INTEGRITY OF THE COURTHOUSE

36.) Plaintiff further alleges that the above named Defendants are further implicated in Intentional violations of rules relevant to committing Fraud Upon the Court. Not only does Mr. DeSanctis violate **Model Rules of Professional Conduct—1.10—3.3—3.4—4.1—4.3—8.3 —& 8.4** by failing to exercise his duty candor before the tribunal. Mr. Judge Paul L. Friedman also allegedly and intentionally breached his **"automatic duty"** to recuse himself in that case based on such vast and extensive financial interests.

See 28 U.S.C. 455——

*a) **Any** justice, judge, or magistrate judge of the United States **shall** disqualify himself in any proceeding in which his impartiality might reasonably be questioned.*
*(b) He **shall** also disqualify himself in the following circumstances:*

*(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;*

*(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;*

*(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;*

*(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.*

37.) Plaintiff hereby further alleges and avers that in a previous Copyright Infringement action, (Case 2006-cv-0480), it was intentionally and fraudulently concealed by the attorneys and the Judge, that the Judge in the case, Judge Paul L. Friedman, secretly possessed massive financial interests in defendant UMG and Vivendi and actively concealed the same from Plaintiff, throughout the litigation and afterwards, to the detriment of Plaintiff's Constitutional, Copyright and Statutory rights, throughout the years 2006, 2007, 2008, 2009, 2010 and 2011. **(See: Exhibit(s) C,D,E,F,G & H).(relation back to original complaint).**

37. a.) Specifically, and upon information and belief, it has been recently learned that Judge Mr. Paul L. Friedman is in deep financial collusion with Vivendi/UMG by way of the following financial institutions and or other vested interests:

**1.) Mutual Beacon Fund**
**2.) Third Avenue Value**
**3.) Vanguard Long Term Tax Exempt Fund**
**4.) iShares Russell 2000 Value Index Fund**

5.) T. Rowe Price Equity Income

6.) American Beacon Int'l Equity Fund

7.) Morgan Stanley

8.) American Funds EuroPacific Growth

9.) First Eagle Global

10.) Loomis Sayles Investment Gr. Bond Fund

11.) Longleaf Partners

38.) Therefore, the judgement fraudulently obtained and rendered in Case 1:06-cv-0480 should be immediately invalidated due to the fraud practiced upon the Court by Officers of the Court. Fraud, and especially Fraud of the type alleged herein, was addressed by amendment of Fed. R. Civ. P. Rule 60 and as expressed in the case of **Hazel Atlas-Glass Co. v. Hartford Empire Co., 322 U.S. 238 (1944).**

39.) Plaintiff hereby states, re-alleges and re-states that: *"Every element of the fraud here disclosed demands the exercise of the historic power of equity to set aside the fraudulently begotten judgment....Here...we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals. The Public welfare demands that the agencies of Public Trust be not so impotent that they must always be mute and helpless victims of deception and fraud...citing and quoting Hazel Atlas-Glass, supra....*

## FRAUD ALLEGED HEREIN IS EXTRINSIC

40.) In United States v. Throckmorton, it was held that ***"Extrinsic Fraud"*** is a species of fraud which can overturn a judgment. In Throckmorton, Mr. Supreme Court Justice Black said:

***"Tampering with the Administration of Justice"*** *as indisputably shown here, involves far more than a single litigant. It is a wrong against the institutions set up to protect and safeguard the*

*public, institutions in which Fraud cannot complacently be tolerated consistent with the good order of society"...*

Accordingly, a Court may, *at any time*, set aside a judgment for *after discovered Fraud Upon the Court*. *(Please See: Hazel Atlas-Glass v. Hartford, supra)...*

## ALLEGED FRAUD IS MANIFESTLY UNCONSCIONABLE IN A CIVILIZED SOCIETY

41.) Plaintiff is well aware that under Modern Jurisprudence standards, and out of a deference to the deep rooted policy in favor of the repose of judgments...that Courts of Equity have been cautious in exercising their power {in upsetting judgments}....But when the occasion has demanded, (as is apparently the case here).....where enforcement of the judgment is *"manifestly unconscionable"*....Courts of Equity have wielded that power without hesitation"...In this case, involving over *(20) twenty* original and copyrighted expressions of Plaintiff, being fraudulently reverted to ownership of same expressions the fraud practicing Defendants, by way of a Federal Judicial Officer/Actor, is equal to a Judicial Aberration and Abomination. *(See: Shammus v. Shammus, and Throckmorton, supra note).*

42.) For the aforementioned reasons, the Fraudulently obtained Judgment of Case 06-0480, should be invalidated and Judgement concerning the (20) twenty songs immediately reverted to the Plaintiff, except for an accounting and contemplation of Punitive Damages adjudged thereby, with a view to the scope and depth of the complained of activities, after a hearing, and for any other and further relief this Honorable Court deems just and proper.

## COUNT FOUR:
### INTENTIONAL 42 U.S.C. 1982 VIOLATIONS

43.) Plaintiff further alleges that the above named defendants, all of them, knew or should have known that conduct similar to that employed during the days of slaver could be construed to

trigger the enforcement clauses of the 13th Amendment, namely 42 U.S.C. 1982, which declares in pertinent part that:

**"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by White citizens thereof, to inherit, purchase, lease, sell, hold and convey real and personal Property"...**

44.) The above named Defendants, by acquiescing with Mr. Judge Paul L. Friedman in the destruction and obliteration of Plaintiff's 13th Constitutional Amendment Right to be free of "Slavery and Involuntary Servitude" in addition to Plaintiff's Copyright Protection concerning the Right to make Derivative versions of it's works, and instead chose to **"Forcefully Take"** Plaintiff's Real Property by way of a Fraudulently conducted litigation where the rights of Plaintiff were taken away regarding every one of the songs Plaintiff was purportedly suing about.

45.) The result of the unlawful holding Plaintiff and his Property "captive" for over (5) five years, effectively forbids Plaintiff from ever again claiming ownership of the (20) Twenty songs in question, but instead, the Fraudulent Judgement actually diluted Plaintiff's Bundle of Rights in the works.

46.) Plaintiff further contends and alleges that it has a Constitutional Right to forbid others from intentionally infringing his Copyrighted Works and making "Derivative Works" from such Plaintiff works, without giving Plaintiff Due Process of Law according to the United States Copyright Act's (5) five Bundle of Rights. After over (5) five years of **Bogus Litigation** perpetrated by the above named Defendants, at no time was Plaintiff's Right to Make Derivative Works of his creations **ever** explored, thereby further denying Plaintiff Due Process of Law.

## COUNT FIVE:
## INTENTIONAL VIOLATIONS OF 42 U.S.C. 1985(3)

47.) Plaintiff further alleges that the above named Defendant Corporations, by way of their various agents aligned for the sake of Vivendi Financial interests, are also implicated in Intentional violation of 42 U.S.C. 1985(3), an enforcement statute of the 13th Amendment, which expressly declares:

47. a.) *"If two or more persons in any State or Territory conspire or **go in disguise** on the highway or **on the premises of another**, for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the Laws; or for the purpose of **preventing** or **hindering** the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if **two or more persons** conspire to prevent by force, intimidation, or threat, any citizen who is lawfully qualified to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified personas an elector for President or Vice President, or as a member of Congress of the United States; or to **injure** any citizen in person or **property** on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the Conspirators"....*

48.) Therefore, it is further alleged that the above named Defendants, conspired to **"fix the case"** and went in disguise in the presence of a United States Federal Judge, well-known by the Defendants to be deeply entrenched financially with the interests of Vivendi and UMG, while secretly knowing the Judge was a business partner of theirs for many years, merely to deprive Plaintiff of it's coveted Song Properties and it's Rights under the 13th Amendment to the United States Constitution.

49.) The object of such a conspiracy and rights deprivation was merely to allow Defendants to continue profiting from the unlawfully taken works for nearly (6) six years, and eventually "take" the works on a technical premise implying that they are no longer in contention as unique and original to Plaintiff since a Federal Judge has decided they could keep the songs and expressions "scot free" of liability or obligation to pay creators of such works, which have become "unlawfully created derivatives" and fully protected by the (5) five bundle of exclusive rights guaranteed to a Copyright Owner.

50.) In essence, Judge Paul L. Friedman intentionally allowed the Defendants to own and keep the unlawfully created derivative works of his original works, while full knowing of his secret financial interests in Vivendi/UMG.

51.) Such secret activities designed to deprive Plaintiff of Property and Constitutional Rights, are hereby deemed unlawful as applied to this Plaintiff, and Judgment should be rendered against the Defendants for such high-handed activities which **BOLDLY** occurred within the confines of a United States Courthouse, with no regard for the rights of Plaintiff as an African American Citizen instead of a mere **"Home-Born Slave"**. Therefore, and since in this case, money and power meant more than integrity, Judgment should be had for Plaintiff and against the Defendants, with the full extent of the damages adequately determined at a hearing.

## COUNT SIX:
## FRAUDULENT CONCEALMENT AND OMISSIONS

52.) Plaintiff further alleges and avers that the above named Defendants are implicated in Fraudulently Concealing Material Facts from the Tribunal as well as Plaintiff, merely to "take" Plaintiff's song property secretly and with no threat of consequence due to such high-powered backing of business partner Mr. Judge Paul L. Friedman.

53.) Thus, each and every named Defendant concealed the material fact of Mr. Friedman being a "deeply entrenched partner" with Vivendi/UMG Financial interests, since Mr. DeSanctis as well

as Mr. Friedman renounced their duties to divulge such crucial material facts concerning such a blatant "impropriety".

54.) Mr. DeSanctis had a duty under the aforementioned Model Rules to divulge such information, and Mr. Friedman also had a duty to "automatically recuse himself" in the face of such obvious impropriety under 28 U.S.C. 455.  However, both DeSanctis and Friedman remained silent in the face of such duties.

55.) The alleged "concealment" of Friedman and DeSanctis was intentional and done merely to induce the blind and naive Plaintiff to continue on with the bogus litigation for (6) six years, merely to "take" Plaintiff's coveted and copyright protected Song Properties.

56.) Plaintiff was totally unaware of Mr. Friedman's deep financial ties with Vivendi/UMG until in or around October 2014 when the Judge finally decided to release such information to the general public.  Had Plaintiff been able to locate such damning documentation, it would have acted differently, and long before this present date, had it known of such suppressed facts.

57.) As a result of such fraudulent concealment by all of the above named Defendants, Plaintiff has suffered extreme damages to his business and property, as a matter of fact and Law.  In spite of the mandatory duty imposed upon DeSanctis and Friedman, they still chose to uphold a alleged unlawful conduct illustrated herein.

58.) The relationship between the Plaintiff, Mr. DeSanctis and Mr. Friedman is hereby deemed a "Special type of Fiduciary Relationship", that is, where a party reasonably imparts a special confidence in the defendant and the defendant would reasonably know of this confidence. *(See: Mackintosh v. Jack Matthews & Co., 109 Nev. 628, 634-35, 855 P.2d 549, 553 (1993), citing Mancini v. Gorick, 41 Ohio App. .3d 373, 536 N.E. 2d 8, 10 (Ohio Ct.App. 1987))*—

59.) A parties **"Superior Knowledge"** thus imposes a **"Duty to Speak"** in order that the opposing party may be placed on equal footing with all the Defendants. (See: Mackintosh, supra.). Even when the parties are dealing **"at arms reach"**, a duty to disclose may arise from the "existence of material facts peculiarly within the knowledge of the party sought to be charged and not within the fair and reasonable reach of the other party". *(See: Villalon v. Bowen, 70 Nev. 456, 467-68, 273 P.2d 409, 415 (1954) & Dow Chemical Co. v. Mahlum, 114 Nev. 1468, 1483-84, 970 P.2d 98, (1998).*

60.) Judgment should be had for Plaintiff and against Defendants for violations of the above precepts and principles of Common law and attendant Statutes. Damages should be determined at a hearing on an accounting, and for any other and further relief this Honorable Court deems just and proper.


Respectfully Submitted

_____
Robert R. Prunty, Jr.
427 West Hickory Street
Arcadia, Florida 34266


I hereby certify, under penalty of perjury, that a true and correct copy of the foregoing was sent by Regular Mail to the following entities and individuals, on February 2ND 2015, and as listed below:

1.) Vivendi Corporation, 800 3rd Avenue #5, New York, N.Y. 10022, c/o Ms. Debra Ford, General Agent, Vivendi Corp.

2.) Atlantic Recordings, Inc., C/o Ms. Elizabeth Kracinas, Authorized Agent. 1633 Broadway, New York, N.Y. 10019.

3.) Warner Music Group, Inc., C/o Ms. Elizabeth Kracinas, Authorized Agent. 1633 Broadway, New York, N.Y. 10019

4.) Universal Music Group, Inc., c/o CT Corporate Systems, 111 8th Avenue, 13th Floor, New York, N.Y.

5.) Island Def Jam Recordings, Inc., C/o CT Corporate Systems, 111 8th Avenue, 13th Floor, New York, N.Y.

6.) Jenner & Block, LLP, c/o Mr. Michael DeSanctis, 1099 New York Avenue, Suite 900, Washington, D.C. 20001-4412