UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ROBERT R. PRUNTY,**
427 West Hickory St.
Arcadia, FL 34266

Plaintiff,

v.

**UNIVERSAL MUSIC GROUP,**
1209 Orange Street
Wilmington, Delaware 19801

**JENNER & BLOCK LLP,**
1099 New York Avenue NW
Suite #900
Washington, D.C. 20001,

**and**

**"Several Officers Of The Court Who Are Unindicted Conspirator Federal Judges, A Senator, A Congresswoman and Myriad Attorneys,"**

Defendants.

Case No. 1:25-cv-02376-TJK

**OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTIONS AT ECF NOS. 13, 15, 16, AND 17**

## TABLE OF CONTENTS

INTRODUCTION ........ 1
FACTS ........ 2
ARGUMENT ........ 5
I. Plaintiff's Allegations Concerning The Public Financial Disclosures Of Judges Friedman And Mehta, And This Court, Do Not Support Any Suggestion Of Impropriety ........ 5
II. All Of Plaintiff's Motions Fail ........ 14
A. Plaintiff's "Motion" Filed At ECF No. 13 Does Not Identify What Relief It Seeks Or The Basis For Such Relief. ........ 14
B. Plaintiff's Recusal Motion Filed At ECF No. 15 Fails Because There Is No Reason For This Court To Recuse. ........ 15
C. Plaintiff's Motion To Vacate Prior Judgments Filed At ECF No. 16 Is Unfounded. ........ 17
D. Plaintiff's Motion Filed At ECF No. 17 Is Procedurally Improper, Legally Insufficient, And Not Grounded In Fact Or Law. ........ 21
E. Because Plaintiff Did Not Confer With Jenner Before Filing These Non-Dispositive Motions, All Of The Motions Should Be Dismissed ........ 28
CONCLUSION ........ 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Ctr. for Civ. Just. v. Ambush*,
680 F. Supp. 2d 21 (D.D.C. 2010) ............ 6, 13, 23

*Ex parte Am. Steel Barrel Co.*,
230 U.S. 35 (1913)............ 22

*Andreas v. Volkswagen of Am., Inc.*,
336 F.3d 789 (8th Cir. 2003)............ 14

*Armenian Assembly of Am., Inc. v. Cafesjian*,
783 F. Supp. 2d 78 (D.D.C. 2011)............ 8

*Arunachalam v. Int'l Bus. Machines Corp.*,
2016 WL 5403592 (D. Del. Sept. 26, 2016) ............ 8

*Ashbourne v. Hansberry*,
2024 WL 3471243 (D.D.C. July 18, 2024)............ 17

*Baldyga v. United States*,
337 F. Supp. 2d 264 (D. Mass. 2004)............ 12

*Beberman v. Rubio*,
2025 WL 2531870 (D.D.C. Sept. 3, 2025)............ 2

*Berger v. United States*,
255 U.S. 22 (1921)............ 22, 23

*Bowie v. Maddox*,
677 F. Supp. 2d 276 (D.D.C. 2010) ............ 20

*Cent. Tel. Co. of Va. v. Sprint Commc'ns Co. of Va.*,
715 F.3d 501 (4th Cir. 2013)............ 8

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)............ 24, 26

*Clay v. Brown, Hopkins & Stambaugh*,
892 F. Supp. 11 (D.D.C. 1995)............ 16

*Cornish v. Dudas*,
715 F. Supp. 2d 56 (D.D.C. 2010)............ 27

*de Botton v. Quality Loan Serv. Corp. of Wash.*,
2024 WL 458277 (W.D. Wash. Jan. 10, 2024) ........ 8

*Doe v. Cabrera*,
134 F. Supp. 3d 439 (D.D.C. 2015) ........ 15

*English v. Wash. Metro. Area Transit Auth.*,
293 F. Supp. 3d 13 (D.D.C. 2017) ........ 28

*Gullet-el v. United States*,
2024 WL 4771469 (D.D.C. Nov. 13, 2024) ........ 6, 23

*Hajjar-Nejad v. George Washington Univ.*,
802 F. Supp. 2d 166 (D.D.C. 2011) ........ 28

*Hamrick v. Hoffman*,
550 F. Supp. 2d 8 (D.D.C. 2008) ........ 13, 23

*In re Hawsawi*,
955 F.3d 152 (D.C. Cir. 2020) ........ 6, 12

*Haynes v. Navy Fed. Credit Union*,
282 F.R.D. 17 (D.D.C. 2012) ........ 28

*Hinman v. Rogers*,
831 F.2d 937 (10th Cir. 1987) ........ 2

*HRH Servs., LLC v. Travelers Indem. Co.*,
2024 WL 5246521 (D.D.C. Dec. 30, 2024) ........ 25

**Huebner v. Midland Credit Mgmt., Inc.*,
2015 WL 1966280 (E.D.N.Y. May 1, 2015) ........ 8

*In re Hunt*,
2017 WL 6514686 (C.D. Cal. July 5, 2017) ........ 14

*Husayn v. Austin*,
2024 WL 4443740 (D.D.C. Oct. 8, 2024) ........ 24

*In Lux Rsch. v. Hull McGuire PC*,
2024 WL 774858 (D.D.C. Feb. 26, 2024) ........ 27

*J & L Brown Fam., LLC v. Bradshaw*,
2019 WL 7504841 (D. Kan. Jan. 18, 2019) ........ 14

*Johnson v. United States*,
2011 WL 940841 (E.D. Mo. Mar. 16, 2011) ........ 19

*Jordan v. U.S. Dep't of Just.*,
315 F. Supp. 3d 584 (D.D.C. 2018) .......... 6, 12, 15

*Jordan v. U.S. Dep't of Lab.*,
331 F.R.D. 444 (D.D.C. 2019) .......... 18

*In re Kan. Pub. Emps. Ret. Sys.*,
85 F.3d 1353 (8th Cir. 1996) .......... 10

*Kay v. Ehrler*,
499 U.S. 432 (1991) .......... 26

**Klayman v. Judicial Watch, Inc.*,
2019 WL 3719008 (D.D.C. Aug. 7, 2019) .......... 5, 6, 11, 22

*Klayman v. Judicial Watch, Inc.*,
2021 WL 602900 (D.D.C. Feb. 16, 2021) .......... 17

*Klayman v. Judicial Watch, Inc.*,
744 F. Supp. 2d 264 (D.D.C. 2010) .......... 23

*Kline v. Ahuja*,
2021 WL 5505512 (D.D.C. Nov. 24, 2021) .......... 17

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
838 F.2d 1287 (D.C. Cir. 1988) .......... 21

*Mack v. Food Lion, LLC*,
791 F. Supp. 3d 632 (E.D.N.C. 2025) .......... 25

*Mavis v. Com. Carriers, Inc.*,
408 F. Supp. 55 (C.D. Cal. 1975) .......... 10

*Microsoft Corp. v. United States*,
530 U.S. 1301 (2000) .......... 9

*More v. Lew*,
34 F. Supp. 3d 23 (D.D.C. 2014) .......... 17, 18

*Murchison v. Inter-City Mortg. Corp. Profit Sharing & Pension Plans*,
503 F. Supp. 2d 184 (D.D.C. 2007) .......... 2

*Murray v. Lappin*,
2011 WL 3438883 (D.D.C. Aug. 5, 2011) .......... 26

*Osei v. Standard Chartered Bank*,
2019 WL 917998 (D.D.C. Feb. 25, 2019) .......... 12

*Peterson v. Islamic Republic of Iran*,
224 F. Supp. 3d 17 (D.D.C. 2016) ........ 26

*In re Placid Oil Co.*,
802 F.2d 783 (5th Cir. 1986) ........ 9

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,
235 F.R.D. 521 (D.D.C. 2006) ........ 28

*Precision Weather Sols. Inc. v. Farmers Edge Inc.*,
2023 WL 2158368 (4th Cir. Feb. 22, 2023) ........ 8

*Priority One Servs., Inc. v. W & T Travel Servs., LLC*,
987 F. Supp. 2d 1 (D.D.C. 2013) ........ 25, 26

*Prunté v. Universal Music Grp.*,
2009 WL 10697276 (D.D.C. Mar. 25, 2009) ........ 1

*Prunté v. Universal Music Grp.*,
484 F. Supp. 2d 32 (D.D.C. 2007) ........ 3

**Prunte v. Universal Music Grp., Inc.*,
425 F. App'x 1 (D.C. Cir. 2011) ........ 3, 19

**Prunté v. Universal Music Grp., Inc.*,
699 F. Supp. 2d 15 (D.D.C. 2010) ........ *passim*

**Prunty v. Agency for Healthcare Admin.*,
2017 WL 3782790 (M.D. Fla. Aug. 31, 2017) ........ 8, 23

*Prunty v. U.S. Dep't of Educ.*,
2017 WL 1165090 (M.D. Fla. Mar. 29, 2017) ........ 17

**Prunty v. Vivendi*,
130 F. Supp. 3d 385 (D.D.C. 2015) ........ *passim*

*Prunty v. Vivendi*,
2015 WL 13696205 (D.D.C. Nov. 18, 2015) ........ 3, 27

*Prunty v. Vivendi*,
2015 WL 13696206 (D.D.C. Oct. 21, 2015) ........ 3, 27

**In re Prunty*,
2016 U.S. App. LEXIS 2749 (D.C. Cir. Feb. 17, 2016) ........ 4

**In re Prunty*,
2016 U.S. App. LEXIS 2760 (D.C. Cir. Feb. 17, 2016) ........ 4, 27

*Reynolds v. Starcevich*,
2012 WL 602935 (E.D. Cal. Feb. 23, 2012) .......... 21

*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980) .......... 24

*Rote v. Comm. on Jud. Conduct & Disability of Jud. Conf. of U.S.*,
2019 WL 5789742 (D.D.C. Nov. 6, 2019) .......... 11

*S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.*,
740 F.2d 980 (D.C. Cir. 1984) .......... 27

*S.E.C. v. Bilzerian*,
729 F. Supp. 2d 19 (D.D.C. 2010) .......... 2, 6

*SEC v. Loving Spirit Found. Inc.*,
392 F.3d 486 (D.C. Cir. 2004) .......... 23

*In re Sherwin-Williams Co.*,
607 F.3d 474 (7th Cir. 2010) .......... 5

*Stonehill v. Internal Revenue Serv.*,
2024 WL 4679128 (D.D.C. Nov. 5, 2024) .......... 18

*Strange v. Islamic Republic of Iran*,
2014 WL 1364952 (D.D.C. Apr. 8, 2014) .......... 5

*Strange v. Islamic Republic of Iran*,
46 F. Supp. 3d 78 (D.D.C. 2014) .......... 22, 24

*Toscano v. Dep't of Pers. of N.J.*,
2009 WL 3335065 (D.N.J. Oct. 15, 2009) .......... 14

*In re Trigee Found., Inc.*,
2017 WL 562425 (Bankr. D.D.C. Feb. 10, 2017) .......... 19

*Turner v. Sacramento City Fire Dep't*,
2022 WL 1720875 (E.D. Cal. May 27, 2022) .......... 14

*Twist v. Ashcroft*,
66 F. App'x 207 (D.C. Cir. 2003) .......... 17

*Tynan v. United States*,
376 F.2d 761 (D.C. Cir. 1967) .......... 23

*United States v. Balistrieri*,
779 F.2d 1191 (7th Cir. 1985) .......... 16

*United States v. Choi*,
818 F. Supp. 2d 79 (D.D.C. 2011) ........ 16

*United States v. Farkas*,
149 F. Supp. 3d 685 (E.D. Va. 2016) ........ 6, 12, 19

*United States v. Hanrahan*,
248 F. Supp. 471 (D.D.C. 1965) ........ 23

*United States v. Marin*,
662 F. Supp. 2d 155 (D.D.C. 2009) ........ 6

*United States v. Nixon*,
267 F. Supp. 3d 140 (D.D.C. 2017) ........ 6, 11, 15

*United States v. Pope*,
2025 WL 2105571 (D.D.C. July 28, 2025) ........ 25

*United States v. Reynolds*,
2009 WL 2430825 (E.D. Tenn. Aug. 6, 2009) ........ 14

*United States v. Sci. Applications Int'l Corp.*,
555 F. Supp. 2d 40 (D.D.C. 2008) ........ 28

*United States v. Trump*,
694 F. Supp. 3d 144 (D.D.C. 2023) ........ 2

*United States v. Williamson*,
903 F.3d 124 (D.C. Cir. 2018) ........ 12, 23

*Wall v. Reliance Standard Life Ins. Co.*,
2022 WL 17976806 (D.D.C. Nov. 8, 2022) ........ 26

*Walsh v. Hagee*,
10 F. Supp. 3d 15 (D.D.C. 2013) ........ 20

*Watford v. LaFond*,
725 F. App'x 412 (7th Cir. 2018) ........ 23

**Statutes**

5 U.S.C. § 13104(f)(8) ........ 11

17 U.S.C. § 504(c) ........ 20

28 U.S.C. § 144 ........ *passim*

28 U.S.C. § 455 ........ *passim*

**Court Rules**

Fed. R. Civ. P. 7(b)........................................................................................14, 20, 27

Fed. R. Civ. P. 60..............................................................................................17, 20

Local Civil Rule 7(m).............................................................................................28

**Other Authorities**

*Activision Blizzard Announces Transformative Purchase Of Shares From Vivendi And New Capital Structure*, Activision Blizzard (July 25, 2013), https://investor.activision.com/news-releases/news-release-details/activision-blizzard-announces-transformative-purchase-shares;.........................................................9

*Advisory Op. No. 106*, 2B Guide to Jud. Pol'y, Ch. 2..............................................................9

*Sierra Is Back!!!*, Activision Blizzard (Aug. 12, 2014), https://investor.activision.com/news-releases/news-release-details/sierra-back.....................9

*Universal Music's Shares Soar 36.5% at First Day of Trading's Close*, Variety (Sept. 21, 2021), https://variety.com/2021/music/news/universal-music-shares-ipo-1235070391.........................................................................................15

## INTRODUCTION

Plaintiff has repeatedly filed frivolous motions in past lawsuits against these Defendants and others, as Jenner & Block LLP ("Jenner") explained in its pending motion to dismiss the Amended Complaint. ECF No. 7-1 (Jenner MTD Br.) at 31-34; *see also Prunté v. Universal Music Grp.*, 2009 WL 10697276, at *1 (D.D.C. Mar. 25, 2009) (warning Plaintiff to stop "clogging this Court's docket with meritless motions"). Underscoring that point, and before the parties could fully brief their pending motions to dismiss the Amended Complaint, Plaintiff filed four overreaching and unsupported motions, which demand nearly all the relief sought in his Amended Complaint and accuse three Judges of this District of an alliance to effect "Court operated and sanctioned Fraud Upon the Court." *See* ECF No. 16 (Pl.'s Mot. to Vacate) at 2, 7 (emphasis omitted); *see also* ECF No. 13 (Pl.'s Unspecified Mot.) ("motion" apparently intended to report the three Judges for this alleged judicial misconduct); ECF No. 15 (Pl.'s Recusal Mot.) (seeking this Court's recusal on the same basis); ECF No. 17 (Pl.'s 144/455 Mot.) (demanding sanctions, vacatur of prior judgments against Plaintiff, civil and punitive damages, recusal, and other relief on the same basis) (collectively, the "Motions").[1]

All four motions lack merit. In several of them, Plaintiff attempts to reopen frivolous prior lawsuits against the Defendants named here, the last of which was dismissed more than ten years ago. To support those requests for reopening, Plaintiff impugns the honesty and impartiality of each Judge who presided over a prior matter, asserting that each Judge holds financial interests in

[1] Plaintiff also filed an opposition to Jenner's Motion To Dismiss The Amended Complaint And For Injunctive Relief. ECF No. 18. Plaintiff styled that filing as a "Motion in Opposition to Motion to Dismiss . . . And Motion To Vacate All Rulings And Judgments Pertaining To The Fraudulent Collusion Between Vivendi And . . . Judges . . . ." Since the document does not request any relief, Jenner understands the filing to be Plaintiff's opposition brief and not an additional motion to vacate the prior judgments. But if intended as such a motion, it fails for reasons stated herein and directed to the four additional Motions.

affiliates of Defendant UMG Recordings, Inc. ("UMG"),[2] and has concealed those interests in collusion with the Defendants. *See, e.g.*, Pl.'s 144/455 Mot. at 1. Plaintiff made precisely that argument in 2014, when he argued that the Judge presiding over his prior lawsuit had conspired with Defendants to conceal financial interests in those same entities. *See* ECF No. 7-5 (2014 Compl.) ¶¶ 36-60. The argument was rightly rejected because it had no grounding in fact or law. *See Prunty v. Vivendi*, 130 F. Supp. 3d 385, 389-90 (D.D.C. 2015) ("*Prunty II*").

The same result is required here. Neither Judge who presided over Plaintiff's prior lawsuits would have been required to recuse based on the facts Plaintiff alleges. Quite the contrary. Where the stated basis for recusal is unfounded, it is incumbent on judges to proceed. *See United States v. Trump*, 694 F. Supp. 3d 144, 150 (D.D.C. 2023); *S.E.C. v. Bilzerian*, 729 F. Supp. 2d 19, 22 (D.D.C. 2010); *Murchison v. Inter-City Mortg. Corp. Profit Sharing & Pension Plans*, 503 F. Supp. 2d 184, 188 (D.D.C. 2007); *see also Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). For the same reason, this Court should decline Plaintiff's invitation to recuse and instead adjudicate the pending motions to dismiss. The alternative would only permit Plaintiff to delay and multiply the proceedings further.

In short, none of Plaintiff's Motions has a colorable basis in fact or law. For that reason, and others elaborated below, the Court should deny each Motion with prejudice.

## FACTS

In 2006, Plaintiff sued UMG (alongside numerous other defendants). Plaintiff claimed that popular music artists had infringed his copyrights in certain songs. *See Prunté v. Universal Music Grp., Inc.*, 699 F. Supp. 2d 15, 18 (D.D.C. 2010) ("*Prunty I*").[3] Jenner appeared in the case as

---

[2] Erroneously identified in the case caption as "Universal Music Group."

[3] "The Court may take judicial notice of the dockets in other judicial proceedings" for "facts on the public record." *Beberman v. Rubio*, 2025 WL 2531870, at *4, n.2 (D.D.C. Sept. 3, 2025)

counsel for defendants. *Id.* Judge Friedman presided over the suit, dismissing the majority of Plaintiff's claims in 2007, and granting summary judgment for Defendants as to the remainder in 2010. *See id.*; *Prunté v. Universal Music Grp.*, 484 F. Supp. 2d 32, 42 (D.D.C. 2007). The D.C. Circuit affirmed, holding that "the lyrics of the allegedly infringing songs were not substantially similar to protectible elements of [Plaintiff's] works." *Prunte v. Universal Music Grp., Inc.*, 425 F. App'x 1, 1-2 (D.C. Cir. 2011).

In 2014, Plaintiff again sued UMG and its affiliates. This time, Plaintiff also named Jenner as a defendant, claiming that Jenner had conspired with UMG, its affiliates, and Judge Friedman to "hide from [Plaintiff] Judge Friedman's alleged financial interest in Defendants Vivendi SA and UMG Recordings, Inc." *Prunty II*, 130 F. Supp. 3d at 388-89; *see* ECF No. 7-5 (2014 Compl.). Judge Mehta presided over the action, dismissing the complaint in its entirety, and finding (among other things) that allegations of a conspiracy were "fanciful" and "fantastic." *Prunty II*, 130 F. Supp. 3d at 389. Judge Mehta also explained that even if Plaintiff's allegations were true—specifically, that Judge Friedman held financial interests in mutual funds which in turn held securities in one or more of the defendant companies—they would not give rise to any suggestion of impropriety, because "a federal judge's ownership of a mutual fund that happens to own stock in a party appearing before the court does not constitute a 'financial interest' in a party" under applicable ethics rules. *Id.* at 389 n.4.

Plaintiff next filed two motions accusing *Judge Mehta* of bias in favor of the defendants, citing a footnote in which Judge Mehta wrote that he was a fan of hip-hop music. The Court denied both motions. *Prunty v. Vivendi*, 2015 WL 13696206, at *1 (D.D.C. Oct. 21, 2015); *Prunty v. Vivendi*, 2015 WL 13696205, at *1 (D.D.C. Nov. 18, 2015).

---

(Kelly, J.) (citation omitted).

Plaintiff pursued his claims that Judges Mehta and Friedman were biased against him through mandamus petitions to the D.C. Circuit. The D.C. Circuit denied the petitions as meritless because Plaintiff did not demonstrate any reason to suspect impropriety or bias on the part of either Judge. *In re Prunty*, 2016 U.S. App. LEXIS 2749, at *1 (D.C. Cir. Feb. 17, 2016) (denying petition to reopen *Prunty I*); *In re Prunty*, 2016 U.S. App. LEXIS 2760, at *1 (D.C. Cir. Feb. 17, 2016) (denying petition to reopen *Prunty II*).

Almost a decade later, on July 14, 2025, Plaintiff filed another complaint against UMG and Jenner. ECF No. 1 (Compl.). In his Complaint, as amended, Plaintiff again asserts that there exists a "secret alliance" between Jenner, UMG, and various Judges, apparently for the purpose of dismissing his copyright claims. *See, e.g.*, ECF No. 3 (Am. Compl.) ¶ 5; *see* also ECF No. 7-3 (alternate version of Complaint served on Jenner). Jenner and UMG have both moved to dismiss the Amended Complaint. ECF No. 7 (Jenner Mot.); ECF No. 19 (UMG Mot.).

In the Motions, Plaintiff seeks varied relief on the basis that Judge Friedman, Judge Mehta, and this Court concealed financial interests in entities that Plaintiff says were identified in financial disclosures and allegedly had some connection to UMG's former parent company, Vivendi. *See* ECF Nos. 13, 15, 16, 17; *see, e.g.*, ECF No. 17 (Pl.'s 144/455 Mot.) at 7 (objecting that judges "merely named and disclosed" the interests they held).[4]

[4] The Motions reference various entities, but do not explain the nature of each Judge's connection to those entities. Plaintiff also attaches documents identified as the financial disclosures for Judges Friedman, Mehta, and Kelly. *See* ECF Nos. 16-1, 17-1. To assist the Court in considering the Motions, the attached Appendix identifies where the entities appear in the challenged financial disclosures Plaintiff filed.

## ARGUMENT

### I. Plaintiff's Allegations Concerning The Public Financial Disclosures Of Judges Friedman And Mehta, And This Court, Do Not Support Any Suggestion Of Impropriety.

The Motions are grounded in Plaintiff's claim that Judges Friedman and Mehta, in addition to this Court, "have and still hold huge financial interests in Vivendi/UMG, who are party defendants." ECF No. 17 (Pl.'s 144/455 Mot.) at 7. Plaintiff further claims that all three Judges have abused their positions in order "to protect their stock interests and receive secret pay for making Vivendi appear victorious at Court." *Id.* at 8. Plaintiff therefore claims that *res judicata* and collateral estoppel do not apply to his copyright claims, which have been fully litigated and rejected.[5] *See generally* ECF No. 18 (Pl.'s MTD Opp.) at 4.

The Motions turn on whether judges who have presided over Plaintiff's lawsuits were required to recuse themselves based on their (publicly disclosed) financial holdings. Recusal of federal judges is governed by 28 U.S.C. § 455. *Strange v. Islamic Republic of Iran*, 2014 WL 1364952, at *1 (D.D.C. Apr. 8, 2014); *see* ECF No. 15 (Pl.'s Recusal Mot.) at 4-5 (paraphrasing statute); ECF No. 17 (Pl.'s 144/455 Mot.) at 12 (citing statute). Section 455 provides, in relevant part, as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> . . .
>
> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of

[5] Plaintiff's bias claim against Judge Friedman has also been fully litigated. *See Prunty II*, 130 F. Supp. 3d at 388-89.

the proceeding; . . .

For purposes of Section 455(a), "recusal is required when a reasonable and informed observer would question the judge's impartiality." *Klayman v. Judicial Watch, Inc.*, 2019 WL 3719008, at *2 (D.D.C. Aug. 7, 2019) (cleaned up) (quoting *Loving Spirit Found. Inc.*, 392 F.3d 486, 493 (D.C. Cir. 2004)). "That an unreasonable person, focusing on only one aspect of the story, might perceive a risk of bias is irrelevant." *In re Sherwin-Williams Co.*, 607 F.3d 474, 477 (7th Cir. 2010). While recusal under Section 455(a) is required if an extrajudicial source of bias creates "an appearance of partiality," under Section 455(b), recusal is only required if the judge has "*actual* bias or prejudice" deriving from an interest in the proceeding. *Jordan v. U.S. Dep't of Just.*, 315 F. Supp. 3d 584, 591 (D.D.C. 2018).[6]

Given the "grave threats that potential abuses of this potent statutory tool pose to the judicial system," *see Bilzerian*, 729 F. Supp. 2d at 22, judges are presumed to be impartial, such that disqualification is presumptively inappropriate and the movant's burden to overcome that presumption with proof of bias is substantial. *United States v. Nixon*, 267 F. Supp. 3d 140, 147 (D.D.C. 2017); *Am. Ctr. for Civ. Just. v. Ambush*, 680 F. Supp. 2d 21, 25 (D.D.C. 2010). The movant must present "clear and convincing evidence" that disqualification is required. *Gullet-el v. United States*, 2024 WL 4771469, at *3 (D.D.C. Nov. 13, 2024). "'[B]ald allegations of bias or prejudice' do not suffice." *Klayman*, 2019 WL 3719008, at *2 (quoting *Karim-Panahi v. U.S. Cong., Senate & House of Representatives*, 105 F. App'x 270, 275 (D.C. Cir. 2004) (per curiam)); *see United States v. Marin*, 662 F. Supp. 2d 155, 158 (D.D.C. 2009) ("A judge need not . . . recuse

[6] Plaintiff also moves this Court to recuse itself pursuant to 28 U.S.C. § 144. *See* ECF No. 17 (Pl.'s 144/455 Mot.). "[T]he substantive standard for finding 'personal bias or prejudice' . . . is essentially the same under Sections 144 and 455." *Jordan*, 315 F. Supp. 3d at 592 (quoting *Klayman v. Judicial Watch, Inc.*, 278 F.Supp.3d 252, 257 (D.D.C. 2017)). *See generally* Section II(D) *infra*.

himself [under Section 455] because of unsupported, irrational, or highly tenuous speculation." (citation and internal quotation marks omitted)).

If an issue concerning a judge's impartiality is of a type "within the scope of section 455(b)," and Section 455(b) would not require disqualification, "Section 455(a) should not be read to require" recusal. *In re Hawsawi*, 955 F.3d 152, 159-60 (D.C. Cir. 2020). Plaintiff's allegations focus on the judges' financial interests, an issue squarely addressed by Section 455(b)(4), which therefore governs the recusal analysis. *United States v. Farkas*, 149 F. Supp. 3d 685, 698 (E.D. Va. 2016). Plaintiff's allegations do not meet the substantial burden imposed by Section 455 because of several (independent) factual and legal deficiencies.

*First*, each Motion alleges the existence of disqualifying "financial interests," which are primarily based on the supposed connection between large issuers of mutual funds and ETFs, on the one hand, and UMG's former parent company Vivendi on the other hand. *See, e.g.*, ECF No. 15 (Pl.'s Recusal Mot.) at 2 (asserting generally that Judges Friedman, Mehta, and Kelly have held "concealed financial interests in Vivendi/UMG"); ECF No. 13 (Pl.'s Unspecified Mot.) at 2-3 (asserting that Judge Friedman had a disqualifying financial interest based on a connection to BlackRock, "a large institutional investor in Vivendi through its iShares [ETFs]"); ECF No. 16 (Pl.'s Mot. to Vacate) at 5 (asserting that Judge Mehta had a disqualifying financial interest based on ownership of funds issued by Vanguard, which "is a major institutional investor and holds a stake in Vivendi through its various index and mutual funds"); ECF No. 17 (Pl.'s 144/455 Mot.) at 2-3 (asserting that this Court has a disqualifying financial interest based on a connection to Xtrackers "because some Xtrackers ETFs hold Vivendi stock"); *see also* ECF No. 16-1 at 9, 20-21, 26, 39, 41, 43, 49. As a factual matter, and assuming Plaintiff's (unsupported) allegations concerning the Judges' financial interests are true, they do not establish that any of the specific

funds in which the Judges disclosed investments, and that were issued by the entities listed in Plaintiff's briefs, ever had exposure to Vivendi. Nor do they establish that any relevant funds which happened to hold Vivendi shares did so at the same time as the Judges held the relevant financial interests. If Plaintiff means to suggest that connections between Vivendi and these financial institutions were so pervasive and substantial, and his claim would be so deleterious to Vivendi, that a judgment in his favor would jeopardize the existence of these large financial institutions and thereby impact the Judges' funds or retirement accounts, Plaintiff has offered no evidence to support such claims. Without establishing any of these facts, Plaintiff's Motions fail to prove the existence of any connection between Vivendi's performance and any Judge's financial interests. *See Prunty II*, 130 F. Supp. 3d at 389.

*Second*, as a legal matter, when judges hold financial interests in diversified assets like mutual funds or ETFs, they are not required to recuse themselves based on securities held by that asset. This is because, for purposes of recusal rules, "the law is quite clear that a judge who owns shares in a mutual fund or ETF does not thereby own the securities held by those mutual funds or ETFs." *Huebner v. Midland Credit Mgmt., Inc.*, 2015 WL 1966280, at *2 (E.D.N.Y. May 1, 2015), *aff'd*, 897 F.3d 42 (2d Cir. 2018); *see* 28 U.S.C. § 455(d)(4) (confirming that judges are not disqualified based on ownership in a "mutual or common investment fund that owns securities"); Code of Conduct for U.S. Judges, Canon 3(C)(3)(c)(i) (same). Indeed, these investments are "not [considered to be] financial interest[s] at all." *Huebner*, 2015 WL 1966280, at *3. Similarly, a judge's passive investment in a retirement account also does not constitute a "financial interest" requiring recusal. *See Cent. Tel. Co. of Va. v. Sprint Commc'ns Co. of Va.*, 715 F.3d 501, 516 (4th Cir. 2013); *de Botton v. Quality Loan Serv. Corp. of Wash.*, 2024 WL 458277, at *2 (W.D. Wash. Jan. 10, 2024) (judge had no financial interest in retirement account for purposes of the recusal

rules). As such, these financial interests are not cause for a judge to recuse as a matter of law. *See Prunty v. Agency for Healthcare Admin.*, 2017 WL 3782790, at *3 (M.D. Fla. Aug. 31, 2017) (denying this Plaintiff's recusal motion on this basis); *Prunty II*, 130 F. Supp. 3d at 389-90 & n.4 (rejecting claim that Judge Friedman was biased against Plaintiff on same basis).[7]

*Third*, the types of connections Plaintiff alleges, even if they could be proved, would not suggest that the Judges' interests could be "substantially affected" by the outcome of Plaintiff's lawsuits against UMG or Vivendi. 28 U.S.C. § 455(b)(4). Judges are not disqualified from presiding over cases based on remote, indirect, or speculative connections and interests. *Armenian Assembly of Am., Inc. v. Cafesjian*, 783 F. Supp. 2d 78, 92 (D.D.C. 2011), *aff'd*, 758 F.3d 265 (D.C. Cir. 2014) (collecting cases); *cf. Microsoft Corp. v. United States*, 530 U.S. 1301, 1301-03 (2000) (statement of Rehnquist, C.J.); *In re Placid Oil Co.*, 802 F.2d 783, 786-87 (5th Cir. 1986) (judge's investment in a bank did not require disqualification of the judge from a case that might affect the overall banking industry). If and to the extent they exist, the connections Plaintiff alleges are highly attenuated. For example, if a judge has an interest in a fund that owns shares of Vivendi among hundreds of other, irrelevant securities, it does not follow that a ruling or judgment adverse to one of Vivendi's subsidiaries, or former subsidiaries, could substantially affect the judge's interest in the fund. It also does not follow that Judges Friedman or Mehta, had they been presented with these issues, would have exceeded their discretion by declining to recuse. *See generally* Committee on Codes of Conduct, *Advisory Op. No. 106*, 2B Guide to Jud. Pol'y, Ch. 2, at 204 ("Ultimately, the judge must decide the potential effect on his or her financial interest in the mutual

[7] Nor are judges' ordinary bank accounts potentially disqualifying financial interests. *Precision Weather Sols. Inc. v. Farmers Edge Inc.*, 2023 WL 2158368, at *4 (4th Cir. Feb. 22, 2023); *Arunachalam v. Int'l Bus. Machines Corp.*, 2016 WL 5403592, at *1 (D. Del. Sept. 26, 2016), *aff'd*, 759 F. App'x 927 (Fed. Cir. 2019).

fund.”).

Plaintiff also identifies a handful of other indirect, attenuated interests. For example, Plaintiff alleges that Judge Mehta was biased against him because Judge Mehta reported an interest in the video game retailer Gamestop, and Gamestop sold video games made by certain Vivendi subsidiaries unrelated to Plaintiff’s copyright claims.[8] *See, e.g.*, ECF No. 17 (Pl.’s 144/455 Mot.) at 4 (“The relationship is simply that of a retailer selling a publisher’s products.”); ECF No. 16-1 at 5. This allegation fails to raise suspicions of impropriety. Judge Mehta was not obligated to know of and disclose the identities of all the arm’s-length suppliers of all entities in which he owned securities. In any event, there is no evidence (nor is it plausible) that the results of Plaintiff’s lawsuits against UMG would have impacted Judge Mehta’s financial interests by way of his interest in Gamestop. Accordingly, this purported connection is far too attenuated to give rise to an obligation for a judge to recuse. *See Mavis v. Com. Carriers, Inc.*, 408 F. Supp. 55, 63 (C.D. Cal. 1975) (judge’s interest in a company that did business with defendant’s parent company was not disqualifying); *cf. In re Kan. Pub. Emps. Ret. Sys.*, 85 F.3d 1353, 1362 (8th Cir. 1996) (refusing to “fashion a rule requiring judges to recuse themselves from all cases that might remotely affect nonparty companies in which they own stock”).

Similarly, Plaintiff notes that Judge Mehta held stock in Citigroup, *see* ECF No. 16-1 at 4,

[8] The “subsidiaries” Plaintiff refers to, “Blizzard Entertainment” and “Sierra Entertainment,” are both predecessor entities of Activision Blizzard, which Vivendi spun off as an independent company before Plaintiff filed his 2014 Complaint. *See generally* Press Release, *Activision Blizzard Announces Transformative Purchase Of Shares From Vivendi And New Capital Structure*, Activision Blizzard (July 25, 2013), https://investor.activision.com/news-releases/news-release-details/activision-blizzard-announces-transformative-purchase-shares; Press Release, *Sierra Is Back!!!*, Activision Blizzard (Aug. 12, 2014), https://investor.activision.com/news-releases/news-release-details/sierra-back. Therefore, neither company was actually a Vivendi subsidiary selling video games via Gamestop when Judge Mehta presided over Plaintiff’s 2014 complaint.

and alleges that Citibank "provided key financial services to Vivendi" in "the early 2000s." *See, e.g.*, ECF No. 17 (Pl.'s 144/455 Mot.) at 3-4. Plaintiff does not provide any evidence of such a connection beyond bare assertions. Regardless, this type of commercial connection does not suggest bias on Judge Mehta's part. *Mavis*, 408 F. Supp. at 63. The same is true of Plaintiff's reference to Judge Mehta's ownership of stock in the Walt Disney Corporation. *See* ECF No. 16-1 at 4. Plaintiff claims Disney and a Vivendi subsidiary had some distribution agreements for Disney content that are apparently not connected to UMG in any manner, were inked after Judge Mehta's decisions in *Prunty II*, and were primarily intended to address the French market. ECF No. 17 (Pl.'s 144/455 Mot.) at 5. And Plaintiff also complains that this Court disclosed that it held bonds from GE Capital, on the basis that GE was involved in a transaction with Vivendi in the early 2000s. *Id.* at 6; *see* ECF No. 16-1 at 44. None of these allegations can establish bias. *Mavis*, 408 F. Supp. at 63.

*Fourth*, apart from conclusory allegations of concealment and conspiracy, *e.g.*, ECF No. 18-1 (Pl.'s Aff.) ¶¶ 1, 5-8, 18, Plaintiff identifies no facts to support an inference that Judges Mehta or Friedman were even *aware* of the asserted connections between their financial holdings and Vivendi when they issued their rulings. A judge's decisions cannot be improperly influenced by financial interests of which the judge is unaware. The recusal statute recognizes this, requiring that a judge recuse only if the judge "knows that" he or she has a relevant interest that could be affected by the outcome. 28 U.S.C. § 455(b)(4).

*Fifth*, contrary to Plaintiff's claim that the identified Judges and Defendants concealed the alleged financial connections to Vivendi, *see* ECF No. 17 (Pl.'s 144/455 Mot.) at 7 ("When a judge conceals a financial interest in a party, it . . . can result in the overturning of their decisions"), Plaintiff appears to derive his claims directly and entirely from the judges' publicly filed financial

disclosures. *See id.* at 7 (complaining that judges "merely named and disclosed" the interests they held). If Plaintiff means to argue that the Judges were required to report the investments held by any mutual funds or ETFs, Plaintiff misstates the law. Judges need not report financial interests that are held by diversified or publicly traded investment funds in their financial disclosures. *See* 5 U.S.C. § 13104(f)(8).

*Sixth,* Plaintiff makes unsupported allegations concerning the existence of a conspiracy between the Judges and Vivendi to "secretly control justice." ECF No. 17 (Pl.'s 144/455 Mot.) at 20. These accusations should be dismissed as "fanciful" and "frivolous." *Prunty II*, 130 F. Supp. 3d at 388-89. Indeed, it is well-established that "bald allegation[s] without evidentiary support" are insufficient to disqualify a presiding judge. *See Rote v. Comm. on Jud. Conduct & Disability of Jud. Conf. of U.S.*, 2019 WL 5789742, at *4 (D.D.C. Nov. 6, 2019) (internal citation omitted); *Klayman*, 2019 WL 3719008, at *2; *see also Nixon*, 267 F. Supp. 3d at 149 ("speculation cannot support [a] request for recusal"). Because plaintiff's conclusory, unsupported allegations that the Judges were involved in a conspiracy to defeat his copyright claims "yield no evidence" of bias, such claims cannot provide the basis for recusal. *Jordan*, 315 F. Supp. 3d at 593; *see Osei v. Standard Chartered Bank*, 2019 WL 917998, at *5 (D.D.C. Feb. 25, 2019) (accusations of conspiracy between defendant and court "cannot stand as a basis for recusal . . . when no facts are offered that would fairly convince a sane and reasonable mind to question the Court's impartiality" (cleaned up) (internal quotation removed)), *aff'd*, 2019 WL 2563460 (D.C. Cir. June 4, 2019); *Baldyga v. United States*, 337 F. Supp. 2d 264, 270 (D. Mass. 2004) (plaintiff's "theories of conspiracy without facts to support them" did not constitute "*facts* sufficient to establish partiality or prejudice" (emphasis in original)).

*Seventh,* to the extent Plaintiff relies on Section 455(a), which provides for recusal where

a reasonable person would question the presiding judge's impartiality, Plaintiff's claim fails for the same reasons. There is no basis for questioning the Judges' impartiality based on Plaintiff's allegations concerning the Judges' publicly disclosed investments. Indeed, investments that are outside the scope of "financial interests" for the purposes of Section 455(b)(4) do not form an appropriate basis for arguing there is an appearance of impropriety warranting recusal under Section 455(a). *Farkas*, 149 F. Supp. 3d at 698; *see also Hawsawi*, 955 F.3d at 159-60. And Plaintiff's allegations do not otherwise provide a basis to question the impartiality of any of the Judges. Indeed, the only *facts* Plaintiff alleges in support of his motions (as distinct from conclusions and accusations) consist of the Judges' publicly disclosed financial holdings and the procedural history in his prior litigations. *See generally* ECF No. 18-1 (Pl.'s Aff.). To the extent Plaintiff intends to rely upon the Judges' rulings themselves, those do not afford a basis for questioning a judge's impartiality. *See United States v. Williamson*, 903 F.3d 124, 137 (D.C. Cir. 2018) ("legal disagreements with the district judge's rulings . . . do not afford grounds for a recusal"); *Ambush*, 680 F. Supp. 2d at 25; *Hamrick v. Hoffman*, 550 F. Supp. 2d 8, 13 (D.D.C. 2008).

Finally, Plaintiff points to language in Section 455 that requires recusal if the judge is a party to the proceeding or is acting as a lawyer in the proceeding. 28 U.S.C. § 455(b)(5); *see* ECF No. 17 (Pl.'s 144/455 Mot.) at 12. Plaintiff offers no allegations or argument to support the idea that this provision is relevant. It is not.

Plaintiff has been on notice that these arguments would not provide him with a cognizable argument for renewal of his failed lawsuits since 2015. Plaintiff raised a version of these allegations against Judge Friedman as part of his 2014 complaint. *See* ECF No. 7-5 (2014 Compl.) ¶¶ 36-42 (listing purported connections between entities in Judge Friedman's disclosures and

Vivendi). In dismissing the allegations, Judge Mehta explained that Plaintiff had failed to show (1) that the funds "held individual stock of . . . any . . . of the defendant companies"; (2) that Judge Friedman held funds that held such stock in a defendant entity "*at the time* that [*Prunty I*] was being litigated"; and (3) that Defendants knew of, or in any way "conspired to conceal," any such interests. *Prunty II*, 130 F. Supp. 3d at 389-90. Judge Mehta also pointed out that the allegations "ignore[d]" the rules that preclude recusal based on stocks held by mutual funds and ETFs. *Id.* at 389 n.4. Here, Plaintiff's allegations suffer from all of the same failings.

None of Plaintiff's complaints would, even if supported by evidence, lead a reasonable person to question the impartiality of Judge Friedman, Judge Mehta, or this Court, and none of the complaints suggest that any of the Judges has any interest that would be affected by the outcomes of Plaintiff's litigations. Accordingly, Plaintiff has failed to demonstrate that any of the Judges should be (or should have been) disqualified from presiding over those litigations or to call into question the validity of Judge Friedman's and Judge Mehta's decisions in the prior cases.

## II. All Of Plaintiff's Motions Fail.

Because all Plaintiff's motions are grounded in the same deficient allegations concerning the three Judges' financial disclosures, they necessarily fail on their merits and should be denied. They also suffer from numerous procedural defects and should be denied on those bases as well.

### A. Plaintiff's "Motion" Filed At ECF No. 13 Does Not Identify What Relief It Seeks Or The Basis For Such Relief.

The document filed by Plaintiff at ECF No. 13 is styled as a "Motion informing the Chief Judge Srikanth Srin[i]vasan [of the D.C. Circuit] about" Plaintiff's allegations of connections between Judges and Vivendi. ECF No. 13 (Pl.'s Unspecified Mot.) at 1. However, it does not explain what relief is requested. The only reference to relief appears in the final sentence of the motion: "Vivendi is a French Company that secretly controls Justice in at least the D.C. Circuit,

allegedly, *and for any other and further relief this Honorable Court deem[s] just and proper*." *Id.* at 12 (emphasis added).

If this paper is meant to be a motion, it should be denied. When papers are filed that do not request specific relief or set forth the legal basis for any such relief, courts regularly deny or disregard them. *See, e.g.*, *Turner v. Sacramento City Fire Dep't*, 2022 WL 1720875, at *1 (E.D. Cal. May 27, 2022); *United States v. Reynolds*, 2009 WL 2430825, at *1 (E.D. Tenn. Aug. 6, 2009). That result is required by Fed. R. Civ. P. 7(b), which calls for motions to "state with particularity the grounds for seeking the order" and "state the relief sought." *See, e.g.*, *J & L Brown Fam., LLC v. Bradshaw*, 2019 WL 7504841, at *1 (D. Kan. Jan. 18, 2019); *In re Hunt*, 2017 WL 6514686, at *1 (C.D. Cal. July 5, 2017). When parties do not state clearly the relief requested and basis for that relief, the responding parties lack adequate notice of the matters at bar and the ability to respond. Likewise, the court lacks sufficient information to reasonably adjudicate the motion. *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 793 (8th Cir. 2003); *Toscano v. Dep't of Pers. of N.J.*, 2009 WL 3335065, at *1 (D.N.J. Oct. 15, 2009). To the extent construed to seek relief, the Motion should also be denied for reasons set forth in this Section II.A, and for the reasons set out in Section I *supra*.

### B. Plaintiff's Recusal Motion Filed At ECF No. 15 Fails Because There Is No Reason For This Court To Recuse.

Plaintiff's five-page motion at ECF No. 15 demands that this Court recuse. This motion is apparently made pursuant to 28 U.S.C. § 455, although Plaintiff cites no legal authority. *See* ECF No. 15 (Pl.'s Recusal Mot.) at 2-3 (paraphrasing statute). The motion has no merit for reasons discussed in Section I *supra*.

Under Section 455, judges must recuse themselves if they determine that the moving party has made a showing of an appearance of bias or prejudice sufficient to cause the average citizen

to reasonably question the judge's impartiality, or if the moving party proves the judge has a financial interest in the case. *Jordan*, 315 F. Supp. 3d at 591. When considering a motion under Section 455, the judge need not accept the facts alleged by the movant as true. *Doe v. Cabrera*, 134 F. Supp. 3d 439, 445 (D.D.C. 2015). To avoid abuses like judge-shopping and efforts to undermine the legitimacy of the legal system, courts do not lightly grant motions to recuse but instead apply a presumption against disqualification. *Nixon*, 267 F. Supp. 3d at 146.

As detailed in Section I, the facts alleged in Plaintiff's motion papers do not require or support recusal. Notably, UMG is today a publicly traded company, not a subsidiary of Vivendi. *See* ECF No. 23 (UMG's Corporate Disclosure Statement); Geoff Mayfield, *Universal Music's Shares Soar 36.5% at First Day of Trading's Close*, Variety (Sept. 21, 2021), https://variety.com/2021/music/news/universal-music-shares-ipo-1235070391. So, while none of Plaintiff's arguments presents a plausible basis for recusal of any of the Judges, this is especially so for this Court because Vivendi is not the parent company of any party to this case.

The motion also asserts, as an aside, that the Court should "make such ruling of substitution be retroactive to also reach previous federal judges of this case, . . . namely, Judge(s) Amit Mehta and Judge Paul L. Friedman." ECF No. 15 (Pl.'s Recusal Mot.) at 4. Plaintiff does not provide any explanation or support for this apparent request to retroactively recuse separate judges in separate cases that are long closed.[9] And any such request has been waived. Section 455 "requires that the movant first present a motion for recusal to the judge whose impartiality is at issue," so that the judge (or, in this case, judges) in question can be given an opportunity to respond. *Clay v. Brown, Hopkins & Stambaugh*, 892 F. Supp. 11, 13 (D.D.C. 1995); *see United*

---

[9] Counsel is aware of no authority to support that request. *Cf. United States v. Choi*, 818 F. Supp. 2d 79, 85 (D.D.C. 2011) (district courts cannot issue writs of mandamus to or otherwise order action by other courts).

*States v. Balistrieri*, 779 F.2d 1191, 1202-03 (7th Cir. 1985), *overruled in part on other grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016). To the extent Plaintiff is trying to bypass Judges Friedman and Mehta, the motion is improper and the requests for their disqualification should be denied. *See Clay*, 892 F. Supp. at 13.

In any event, Plaintiff's motion does not include anything close to the requisite factual allegations to justify disqualification. *See* Section I *supra*. Accordingly, Plaintiff's recusal motion at ECF No. 15 should be denied.

### C. Plaintiff's Motion To Vacate Prior Judgments Filed At ECF No. 16 Is Unfounded.

Plaintiff's next motion demands that this Court vacate "the Judg[]ments and all rulings" in *Prunty I* and *Prunty II* based on allegations of "fraud on the court." ECF No. 16 (Pl.'s Mot. to Vacate) at 10. Because Plaintiff has not sufficiently alleged, let alone established, facts to support such extraordinary relief, the motion should be denied.

Plaintiff appears to bring this motion under either Fed. R. Civ. P. 60(d)(3), which acknowledges "a court's power to . . . set aside a judgment for fraud on the court," or under Fed. R. Civ. P. 60(d)(1), which allows a court to "entertain an independent action to relieve a party from a judgment, order, or proceeding." *See* ECF No. 16 (Pl.'s Mot. to Vacate) at 7 (describing this motion as a "Motion from this Independent Action"). Plaintiff does not explain why this relief is available through a motion (rather than an independent action). *See Klayman v. Judicial Watch, Inc.*, 2021 WL 602900, at *6-7 (D.D.C. Feb. 16, 2021) (Rule 60(d)(3) enforced through separate "proceeding," not by motion), *aff'd*, 851 F. App'x 222 (D.C. Cir. 2021); *see also id.* (collecting cases); *Ashbourne v. Hansberry*, 2024 WL 3471243, at *5 n.3 (D.D.C. July 18, 2024). In any event, even if the motion were procedurally proper, it would be meritless for the reasons articulated in Section I *supra*, in Jenner's reply brief in support of its motion to dismiss the

Amended Complaint, *see* ECF No. 20 (Jenner MTD Reply) at 13-14, 19-21, and below.

An independent action to vacate a prior judgment is only available to prevent a "grave miscarriage of justice." *Twist v. Ashcroft*, 66 F. App'x 207 (D.C. Cir. 2003) (quoting *United States v. Beggerly*, 524 U.S. 38, 47 (1998)). Fraud upon the court, such as might justify an independent action under Rule 60(d)(3) to set aside a prior judgment, exists only in rare and grave circumstances; the Rule embraces only the most "egregious forms of subversion of the legal process." *More v. Lew*, 34 F. Supp. 3d 23, 30 n.3 (D.D.C. 2014) (quoting *Great Coastal Express, Inc. v. Int'l Brotherhood of Teamsters*, 675 F.2d 1349, 1357 (4th Cir. 1982)); *see also Kline v. Ahuja*, 2021 WL 5505512, at *9 (D.D.C. Nov. 24, 2021), *aff'd*, 2022 WL 3568054 (D.C. Cir. Aug. 18, 2022); *Prunty v. U.S. Dep't of Educ.*, 2017 WL 1165090, at *1-2 (M.D. Fla. Mar. 29, 2017).

Accordingly, a claim of fraud upon the court must overcome an "extraordinarily high standard," which Plaintiff has failed to meet. *Stonehill v. Internal Revenue Serv.*, 2024 WL 4679128, at *4 (D.D.C. Nov. 5, 2024); *see Jordan v. U.S. Dep't of Lab.*, 331 F.R.D. 444, 451 (D.D.C. 2019) (relief under Rule 60(d)(3) is rarely warranted), *aff'd*, 2020 WL 283003 (D.C. Cir. Jan. 16, 2020). A plaintiff must show that the court's "ability to function impartially is directly impinged" by egregious, willful conduct such as "bribery of a judge or a juror, or improper influence exerted on the court by an attorney." *More*, 34 F. Supp. 3d at 28 (quoting *Great Coastal Express*, 675 F.2d at 1356); *see also Stonehill*, 2024 WL 4679128 at *4. Furthermore, courts in this District have repeatedly emphasized that "conclusions and suppositions rather than clear and convincing evidence of intentional, egregious fraud" are insufficient to meet the high evidentiary burden required to sustain a claim of "fraud upon the court." *Stonehill*, 2024 WL 4679128 at *4.

Here, Plaintiff's argument appears to be that Vivendi "bribe[d] and control[led] judges"

in this District through financial holdings with some attenuated connection to Vivendi; that "[D]efendants actively conceal[ed]" these alleged connections; and that this conspiracy allowed Vivendi to "control[] justice." ECF No. 16 (Pl.'s Mot. to Vacate) at 7-8. Plaintiff does not present evidence for any of these claims.

*First*, as discussed in Section I *supra*, the Judges' publicly disclosed financial interests do not suggest that the Judges were or are biased.

*Second*, the investments that form the basis of this claim were innocuous, were publicly disclosed, and were not direct financial investments in Vivendi or other UMG affiliates. Plaintiff's allegations of a fraudulent conspiracy to conceal connections to Vivendi therefore have no basis in fact.

*Third*, Plaintiff offers nothing beyond conclusory allegations to suggest that Jenner, any other defendant, or the Judges themselves were in fact aware of any of the Judges' alleged connections to Vivendi. Rather, the natural inference from the evidence presented—which consists of the Judges' public financial disclosures—is that the Judges invested in diversified funds of the sort that generally do not give rise to ethical problems. *Cf. Farkas*, 149 F. Supp. 3d at 698 ("A reasonable person would not question the impartiality of a judge who holds nothing but well diversified mutual funds." (quoting *Cent. Tel. Co. of Va.*, 715 F.3d at 516)). This alone is fatal to Plaintiff's argument that the Judges' holdings constituted fraud on the court. There can be no such fraud without a "deliberate attempt to mislead the court" that in fact misleads the court. *In re Trigee Found., Inc.*, 2017 WL 562425, at *5-6 (Bankr. D.D.C. Feb. 10, 2017), *aff'd*, 318 F. Supp. 3d 304 (D.D.C. 2018); *see Johnson v. United States*, 2011 WL 940841, at *2 (E.D. Mo. Mar. 16, 2011).

*Fourth*, Plaintiff has presented no support for the notion that the existence of the Judges'

investments evinces bribery, manipulation, conspiracy, or any other alleged misconduct on the part of Vivendi, UMG, Jenner, or any Judge. These are "fanciful" and "fantastic" allegations and appropriately dismissed as such. *Prunty II*, 130 F. Supp. 3d at 389.

*Fifth*, Plaintiff cannot show that a grave miscarriage of justice occurred here. Even if all of Plaintiff's allegations were true and supported by cognizable evidence—which they are not—the fact would remain that the D.C. Circuit affirmed Judge Friedman's order on its merits, holding that "the allegedly infringing songs were not substantially similar to protectible elements of appellant's works." *Prunte*, 425 F. App'x at 1. That holding, which disposes of Plaintiff's copyright claims, would not be affected by Plaintiff's present allegations.

In short, Plaintiff's allegations do not approach the extraordinarily clear showing of a grave threat to the functioning of the court that would be required to justify overturning decades-old judgments.

Plaintiff also gestures at the existence of "newly discovered evidence," which in some circumstances can be a basis for a motion under Fed. R. Civ. P. 60(b)(2) to set aside the judgment. ECF No. 16 (Pl.'s Mot. to Vacate) at 7-8. It is unclear whether Plaintiff means to indicate that the motion is brought under this Rule. In any event, such a motion would be time-barred, Fed. R. Civ. P. 60(c)(1), and meritless. Plaintiff's motion does not present any evidence, or even arguments, about the merits of his prior claims. *See Walsh v. Hagee*, 10 F. Supp. 3d 15, 19 (D.D.C. 2013) (movant under Fed. R. Civ. P. 60(b)(2) must show, among other things, newly discovered evidence that is admissible and probably would have changed the substantive outcome). Moreover, the allegations Plaintiff does raise are not new; Plaintiff only cites "evidence" of publicly-disclosed financial information to which he had access, and of which he was apparently aware, at the time of his original proceedings. *See Prunty II*, 130 F. Supp. 3d at

389-90; ECF No. 7-5 (2014 Compl.) ¶¶ 36-42; *see also* ECF No. 20 (Jenner MTD Reply) at 20.

Plaintiff also demands, among other relief, that the Court "[r]eturn all money made from the (38) thirty-eight Original Copyrighted songs." ECF No. 16 (Pl.'s Mot. to Vacate) at 10. Plaintiff provides no argument or legal authority to justify this demand, again violating the requirement in Fed. R. Civ. P. 7(b) to "state with particularity the grounds for seeking the order." In any event there is no legal basis for such relief. Even if the prior copyright judgments were somehow vacated (and they cannot be), Plaintiff would not automatically be entitled to judgment in his favor and damages, whether sounding in restitution or the Copyright Act. *See* 17 U.S.C. § 504(c).

Plaintiff has provided no basis in either law or fact for granting his motion to vacate—much less "the sort of unassailable evidence required to overcome the finality of a judgment." *Bowie v. Maddox*, 677 F. Supp. 2d 276, 283 (D.D.C. 2010). This motion should therefore be denied.

### D. Plaintiff's Motion Filed At ECF No. 17 Is Procedurally Improper, Legally Insufficient, And Not Grounded In Fact Or Law.

Finally, Plaintiff brings another meritless motion under 28 U.S.C. §§ 144 and 455. Both statutes address the limited issue of judicial recusal, not the wide-ranging relief Plaintiff requests. Even as to recusal, the motion is procedurally improper. And Plaintiff has provided no evidence that requires recusal. The Court should deny the motion in full.

1. <u>The Relief Plaintiff Demands Is Not Available Through The Procedural Vehicle Of A Miscellaneous Motion Or The Legal Bases Plaintiff Asserts.</u>

Plaintiff requests through this motion effectively the same relief he seeks through his complaint: vacatur of the prior rulings in *Prunty I* and *II*, monetary sanctions, compensatory and punitive damages, and attorney fees, along with "[c]riminal referral to FBI [*sic*] and the Department of Justice." *Compare* ECF No. 17 (Pl.'s 144/455 Mot.) at 21-22, *with* ECF No. 3

(Am. Compl.) ¶¶ 33-34, 36, 46, 66, 68. Courts generally do not award such final relief in a miscellaneous motion, particularly while motions to dismiss are still pending. *E.g.*, *Reynolds v. Starcevich*, 2012 WL 602935, at *1 n.1 (E.D. Cal. Feb. 23, 2012).

In any event, neither statute contemplates this relief. Section 144 permits a party to file "a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice against him or in favor of any adverse party" and provides a procedure for seeking recusal. 28 U.S.C. § 144. Meanwhile, Section 455 identifies the grounds upon which a judge should recuse himself or herself from hearing a pending matter. 28 U.S.C. § 455; *see Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1301 (D.C. Cir. 1988); *see generally* Section I *supra*. Neither statute provides for damages, sanctions, criminal referral, attorney fees, or vacatur, let alone obtaining such relief by motion. The Court should disregard these extraneous demands for relief.

2. <u>Plaintiff's Section 144 Affidavit Is Legally Inadequate.</u>

Amid the other requests for relief, Plaintiff's motion seeks to force this Court (and Judges Friedman and Mehta) to recuse. ECF No. 17 (Pl.'s 144/455 Mot.) at 21. Plaintiff has not satisfied the procedural requirements to obtain such relief under Section 144, but even if he had, the request is meritless.

The judge about whom a Section 144 motion and supporting affidavit are filed is generally responsible for evaluating whether the filing is "timely and legally sufficient." *Klayman*, 2019 WL 3719008, at *3 (citing *United States v. Haldeman*, 559 F.2d 31, 131 (D.C. Cir. 1976)); *see Berger v. United States*, 255 U.S. 22, 36 (1921). To be legally sufficient, (1) the affidavit must be accompanied by a certificate of good faith from counsel of record; (2) it must contain facts alleged with sufficient particularity; and (3) those facts must be sufficient to convince a reasonable person that the judge *actually does* harbor bias that would prevent the judge from

presiding over the case impartially. *Strange v. Islamic Republic of Iran*, 46 F. Supp. 3d 78, 81-82 (D.D.C. 2014). "Obviously, such a showing could rarely be made." *Id.* (quoting *United States v. Hanrahan*, 248 F. Supp. 471, 476 (D.D.C. 1965)); *see Ex parte Am. Steel Barrel Co.*, 230 U.S. 35, 43-44 (1913) (disqualification under predecessor to Section 144 is only applicable "in those rare instances in which the affiant is able to state facts which tend to show not merely adverse rulings already made, which may be right or wrong, but facts and reasons which tend to show personal bias or prejudice").

Here, the only affidavit Plaintiff filed contemporaneously with this motion is the affidavit appearing on the docket at ECF No. 18-1. Assuming this is intended to be the affidavit supporting Plaintiff's motion, it satisfies none of Section 144's requirements. Initially, the affidavit attaches no certificate of good faith from counsel of record. Including such a certificate is "not simply a pro forma procedural obligation but is key to the integrity of the recusal process" and a fundamental safeguard against abuse of that process. *Klayman v. Judicial Watch, Inc.*, 744 F. Supp. 2d 264, 273 (D.D.C. 2010); *see SEC v. Loving Spirit Found. Inc.*, 392 F.3d 486, 496 (D.C. Cir. 2004). Indeed, because of the potential for abuse, courts generally do not allow *pro se* parties (like Plaintiff) to certify that Section 144 affidavits are submitted in good faith. *See, e.g.*, *Watford v. LaFond*, 725 F. App'x 412, 414 (7th Cir. 2018); *Klayman*, 744 F. Supp. 2d at 274. The absence of the certificate requires the Court to deny Plaintiff's motion to the extent it is brought under Section 144. *See Prunty v. Agency for Healthcare Admin.*, 2017 WL 3782790 at *2 (denying this Plaintiff's Section 144 motion on the same basis, among others).

In any event, Plaintiff's affidavit is insufficient because it consists almost entirely of conclusions, not facts. *See Hanrahan*, 248 F. Supp. at 475 (Section 144 affidavit must set forth "identifying facts of time, place, persons, occasion and circumstances . . . with at least that degree

of particularity one would expect to find in a bill of particulars"); *see also Gullet-el*, 2024 WL 4771469, at *6 (Section 144 affidavit was "clearly insufficient" where, instead of averring specific facts, it "merely conclude[d] that the Court is one of the many entities engaging in grievous violations of his rights based on his theories"). To the extent the affidavit alleges any facts, those facts primarily consist of uncontroversial statements about the events of the prior litigations and in particular the rulings of Judges Friedman and Mehta, which are not proper bases for disqualification under Section 144. *See, e.g.*, *Williamson*, 903 F.3d at 137; *Ambush*, 680 F. Supp. 2d at 25; *Hamrick v. Hoffman*, 550 F. Supp. 2d 8, 13 (D.D.C. 2008); *see also Berger*, 255 U.S. at 31 (predecessor to Section 144 was "never intended . . . to enable a discontented litigant to oust a judge because of adverse rulings"); *Tynan v. United States*, 376 F.2d 761, 765 (D.C. Cir. 1967). Plaintiff also addresses matters about which he cannot testify from personal knowledge, such as Jenner's purported awareness that the Judges held interests in Vivendi, ECF No. 18-1 (Pl.'s Aff.) ¶ 16, and the alleged intent of the courts and lawyers to delay the case, *id.* ¶ 18. The remaining allegations contained in the affidavit and the motion are bare, unsupported conclusions regarding the existence of a conspiracy to conceal connections between the Judges and Vivendi. *Id.* at 2; *accord* ECF No. 17 (Pl.'s 144/455 Mot.) at 1-7. Simply put, these averments do not (and cannot) convince a reasonable person that any of the Judges in question "in fact harbor the personal bias or prejudice contemplated by the statute." *Strange*, 46 F. Supp. 3d at 82 (quoting *Hanrahan*, 248 F. Supp. At 475-76); *see* Section I *supra*.

3. Plaintiff's Motion Under Section 455 Is Unsupported.

Plaintiff has not shown (and cannot show) that he is entitled to relief under Section 455 either. This aspect of Plaintiff's motion overlaps entirely with Plaintiff's motion filed at ECF No. 15, and fails for the same reasons. *See* Section II(B) *supra*.

4. Plaintiff's Reference To The Court's Inherent Powers Does Not Support Plaintiff's Claims For Relief.

Plaintiff also invokes this Court's "inherent powers" and suggests that the Court should (1) sanction Vivendi/UMG for "Fraud Upon The Court"; (2) sanction Jenner for allegedly engaging in frivolous, vexatious tactics; (3) award Plaintiff attorney fees; and (4) reform judicial financial reporting requirements to provide additional detail, among other calls for extraordinary relief. *See* ECF No. 17 (Pl.'s 144/455 Mot.) at 20-21. There is no basis to grant any of these requests.

The inherent power to impose sanctions on litigants, "incidental to all Courts," is exercised with "caution" and "restraint." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion."); *Husayn v. Austin*, 2024 WL 4443740, at *14 (D.D.C. Oct. 8, 2024). To warrant sanctions under a court's inherent powers, a party must have engaged in misconduct "affect[ing] the court's ability to manage its own affairs so as to achieve the orderly and expeditious disposition of cases." *United States v. Pope*, 2025 WL 2105571, at *2 (D.D.C. July 28, 2025) (cleaned up). A finding of bad faith is required. *Priority One Servs., Inc. v. W & T Travel Servs., LLC*, 987 F. Supp. 2d 1, 4-5 (D.D.C. 2013). Claims of bad faith that provide "no supporting detail" or that are merely "conclusory allegations" do not suffice. *HRH Servs., LLC v. Travelers Indem. Co.*, 2024 WL 5246521, at *4 (D.D.C. Dec. 30, 2024) (citing *Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023)).

Because Plaintiff fails to provide any evidence of misconduct beyond unsupported and conclusory accusations, these claims for relief also fail. *First*, as already discussed, Plaintiff has failed to plausibly allege "fraud upon the court" or any other misconduct by any judge or defendant. *See* Sections I, II(C) *supra*. Because Plaintiff has failed to provide evidence of

misconduct affecting the administration of justice, he has provided no grounds for the Court to impose sanctions. *See, e.g.*, *Mack v. Food Lion, LLC*, 791 F. Supp. 3d 632, 644 (E.D.N.C. 2025) (plaintiff failed to plausibly allege "any sort of procedural misconduct," precluding invocation of court's inherent powers to award sanctions), *report and recommendation adopted*, 2025 WL 1934524 (E.D.N.C. July 15, 2025).

*Second*, Plaintiff claims that Jenner has "unreasonably and vexatiously multiplied proceedings." ECF No. 17 (Pl.'s 144/455 Mot.) ¶ 72. That is not the case. Indeed, it is Plaintiff who has filed successive lawsuits involving the same or similar defendants, and the same underlying claims. And it is Plaintiff who has filed frivolous motions in each of those lawsuits. *See* ECF No. 7-1 (Jenner MTD Br.) at 32-33 (summarizing procedural history). In this suit alone, Plaintiff already has filed four separate motions alongside his opposition to Jenner's motion to dismiss. Plaintiff does not acknowledge that conduct and does not explain how Jenner, by contesting lawsuits filed against it, has multiplied proceedings. In fact, Jenner has been forced to expend substantial resources responding to Plaintiff's frivolous filings.

*Third*, Plaintiff cannot obtain attorney fees. Plaintiff has appeared *pro se* in this and his previous actions. Courts do not award attorney fees to *pro se* litigants, in part for fear of disincentivizing litigants from employing competent counsel. *Kay v. Ehrler*, 499 U.S. 432, 435-38 (1991); *see, e.g.*, *Murray v. Lappin*, 2011 WL 3438883, at *5 (D.D.C. Aug. 5, 2011); *Wall v. Reliance Standard Life Ins. Co*., 2022 WL 17976806, at *16 (D.D.C. Nov. 8, 2022).

Moreover, as discussed above, a court may exercise its inherent powers to assess attorney fees only "in narrowly defined circumstances." *See Chambers*, 501 U.S. at 45 (citation omitted); *see also Priority One*, 987 F. Supp. 2d at 6. Because the imposition of attorney fees is considered punitive in nature, courts in this District have required a showing of clear and convincing evidence

before awarding fees under their inherent powers. *Peterson v. Islamic Republic of Iran*, 224 F. Supp. 3d 17, 27 (D.D.C. 2016); *Priority One*, 987 F. Supp. 2d at 6. The "frivolous" conduct of which Plaintiff accuses Jenner, even if factually supported, would be insufficient. *Priority One*, 987 F. Supp. 2d at 6 ("[I]f frivolous conduct is premised upon negligence rather than an intentional desire to delay or multiply proceedings, the conduct is not sanctionable—at least not pursuant to the inherent powers of the Court."). Again, Plaintiff has not provided any evidence suggestive of sanctionable conduct, much less clear and convincing evidence of bad faith. Therefore, he is not entitled to attorney fees.

5. Plaintiff Has Not Established Any Other Basis For The Relief Demanded.

Aside from Section 144 and Section 455, Plaintiff alludes to several other supposed bases for his requested relief without further elaboration. These appear to include the Ethics in Government Act and the Courthouse Ethics and Transparency Act, *see* ECF No. 17 (Pl.'s 144/455 Mot.) at 17; due process under the Fifth and Fourteenth Amendments, *id.* at 13-14, 16; judicial ethics rules, *id.* at 14, 18; and unspecified statutes, case law, and Federal Rules of Civil Procedure, *id.* at 14, 16. Simply listing statutes and rules, without explaining how Plaintiff contends they apply, does not provide Jenner with adequate notice of Plaintiff's position and does not suffice to raise any related arguments for consideration by this Court. *See, e.g.*, *Cornish v. Dudas*, 715 F. Supp. 2d 56, 67 n.13 (D.D.C. 2010); *In Lux Rsch. v. Hull McGuire PC*, 2024 WL 774858, at *4 (D.D.C. Feb. 26, 2024). Nor does this tactic meet the requirement of Fed. R. Civ. P. 7(b) that the movant "state with particularity the grounds for seeking the order."

Anyway, these other sources of authority likely would not aid Plaintiff even if they were properly raised. For example, the lack of a basis for Judge Friedman or Judge Mehta to disqualify themselves under the standards set forth in Section 455 necessarily means Plaintiff's due process rights were not violated by their presiding over his cases, because the statutory standards are more

stringent than the constitutional ones. *S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.*, 740 F.2d 980, 990 n.9 (D.C. Cir. 1984). And as already discussed, applicable judicial ethics rules do not suggest any impropriety in this situation. *See* Section I *supra*.

Plaintiff briefly references the idea that Judge Mehta may have violated his due process rights by commenting on his fondness for hip-hop music. ECF No. 17 (Pl.'s 144/455 Mot.) at 8, 16 (accusing Judge Mehta of "vouching for a party" and citing Judge Mehta's opinion declining to recuse). But as Judge Mehta and the D.C. Circuit have both already concluded, this comment did not give rise to any reasonable question as to Judge Mehta's impartiality. *Prunty v. Vivendi*, 2015 WL 13696206, at *1; *Prunty v. Vivendi*, 2015 WL 13696205, at *1; *In re Prunty*, 2016 U.S. App. LEXIS 2760, at *1. Indeed, Plaintiff is collaterally estopped from raising the issue again. *See* ECF No. 7-1 (Jenner MTD Br.) at 22-23.

### E. Because Plaintiff Did Not Confer With Jenner Before Filing These Non-Dispositive Motions, All Of The Motions Should Be Dismissed.

Local Civil Rule 7(m) requires that, prior to "filing any nondispositive motion in a civil action," a party must "discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement." The rule explicitly "applies to non-incarcerated parties appearing *pro se*." *Id.* The Standing Order in this case contains the same requirement. ECF No. 2 (Standing Order) § 11(a).

Plaintiff did not confer with Jenner before filing these four non-dispositive motions. Motions that are filed without the consultation required by the Local Rules "will be denied." *See, e.g.*, *Haynes v. Navy Fed. Credit Union*, 282 F.R.D. 17, 19 (D.D.C. 2012) (quoting *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006)); *see also English v. Wash. Metro. Area Transit Auth.*, 293 F. Supp. 3d 13, 16 (D.D.C. 2017); *Hajjar-Nejad v. George Washington Univ.*, 802 F.

Supp. 2d 166, 178 (D.D.C. 2011); *United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006). Accordingly, the Motions should all be denied.

**CONCLUSION**

This Court has not had an opportunity to rule on the pending Motions to Dismiss. And Plaintiff already is "clog[ging] the Court's docket with meritless motions." *Prunty I*, 699 F. Supp. 2d at 20 (cleaned up). The burden on Jenner to respond to Plaintiff's meritless filings, and on the Court to resolve them, has already become substantial. To ensure the efficient administration of justice, this Court should deny Plaintiff's motions, dismiss the Amended Complaint, and enjoin Plaintiff from further litigating these long-settled claims.

For the foregoing reasons, Plaintiff's four Motions at ECF Nos. 13, 15, 16, and 17 should be denied with prejudice.

Dated: December 3, 2025

Respectfully submitted,

*/s/ Alex S. Trepp*

Alex S. Trepp (#1031036)
JENNER & BLOCK LLP
1099 New York Ave., NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6000
Fax: (202) 639-6066
ATrepp@jenner.com

*Attorney for Defendant Jenner & Block LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2025, I filed the foregoing document with the Clerk of Court for the United States District Court for the District of Columbia using the court's CM/ECF filing system. Additionally, on the same day, I caused a copy of the foregoing document to be mailed to Plaintiff Robert R. Prunty at his mailing address on record with the Court by certified mail.

*/s/ Alex S. Trepp*

Alex S. Trepp (#1031036)
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6000
Fax: (202) 639-6066
ATrepp@jenner.com