**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**ROBERT R. PRUNTY,**
427 West Hickory St.
Arcadia, FL 34266

Plaintiff,

v.

**UNIVERSAL MUSIC GROUP,**
1209 Orange Street
Wilmington, Delaware 19801

**JENNER & BLOCK LLP,**
1099 New York Avenue NW
Suite #900
Washington, D.C. 20001,

**and**

**"Several Officers Of The Court Who Are Unindicted Conspirator Federal Judges, A Senator, A Congresswoman and Myriad Attorneys,"**

Defendants.

Case No. 1:25-cv-02376-TJK

**DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION UNDER 28 U.S.C. §§ 144 AND 455 AND IN RESPONSE TO THE COURT'S JANUARY 16, 2026 MINUTE ORDER**

# CONTENTS


INTRODUCTION ........ 1

FACTS ........ 1

ARGUMENT ........ 4

I. This Case Is Not "Related" To Plaintiff's Prior Lawsuits Within The Meaning Of Local Rule 40.5. ........ 4

II. Plaintiff's Motion Under 28 U.S.C. §§ 144 And 455 Fails As A Matter Of Fact And Law. ........ 6

A. Plaintiff's Allegations Concerning This Court's Public Financial Disclosures, And Those Of Judges Friedman And Mehta, Do Not Support Any Suggestion Of Impropriety ........ 6

1. Plaintiff's Section 144 Affidavit Is Legally Insufficient To Require Recusal. ........ 7

2. Plaintiff Must Present Clear And Convincing Evidence To Overcome the Presumption Against Recusal Under Section 455(b). ........ 12

3. Plaintiff's Unsupported Allegations Provide No Evidence of Bias and Certainly Do Not Overcome the Presumption Against Recusal. ........ 14

B. Plaintiff's Motion Has No Legal Basis. ........ 24

1. Damages, Sanctions, And Other Miscellaneous Relief Are Not Available Through A Motion Under Sections 144 Or 455. ........ 24

2. Plaintiff Has Not Established Any Other Basis For The Relief Demanded. ........ 25

3. To The Extent Plaintiff's Motion Seeks Recusal Of Judges Friedman And Mehta, There Is No Legal Basis For That Relief. ........ 27

CONCLUSION ........ 28

# TABLE OF AUTHORITIES

**Cases** .................................................................................................................... **Page(s)**

*Am. Ctr. for Civ. Just. v. Ambush*,
680 F. Supp. 2d 21 (D.D.C. 2010)....................................................................11, 13, 23

*Ex parte Am. Steel Barrel Co.*,
230 U.S. 35 (1913)..........................................................................................................8

*Armenian Assembly of Am., Inc. v. Cafesjian*,
783 F. Supp. 2d 78 (D.D.C. 2011)..........................................................................16, 17

*Arunachalam v. Int'l Bus. Machines Corp.*,
2016 WL 5403592 (D. Del. Sept. 26, 2016)..................................................................16

*Baldyga v. United States*,
337 F. Supp. 2d 264 (D. Mass. 2004)............................................................................22

*Beberman v. Rubio*,
2025 WL 2531870 (D.D.C. Sept. 3, 2025) ....................................................................2

*Berger v. United States*,
255 U.S. 22 (1921)..................................................................................................8, 9, 11

*Cent. Tel. Co. of Va. v. Sprint Commc'ns Co. of Va.*,
715 F.3d 501 (4th Cir. 2013) .........................................................................................16

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)........................................................................................................27

*Clay v. Brown, Hopkins & Stambaugh*,
892 F. Supp. 11 (D.D.C. 1995).......................................................................................28

*ClearOne Commc'ns, Inc. v. Bowers*,
643 F.3d 735 (10th Cir. 2011) .................................................................................16, 18

*Cornish v. Dudas*,
715 F. Supp. 2d 56 (D.D.C. 2010)..................................................................................25

*Dale v. Exec. Off. of President*,
121 F. Supp. 2d 35 (D.D.C. 2000)....................................................................................6

*de Botton v. Quality Loan Serv. Corp. of Wash.*,
2024 WL 458277 (W.D. Wash. Jan. 10, 2024)...............................................................16

*Doe v. Cabrera*,
134 F. Supp. 3d 439 (D.D.C. 2015).................................................................................14

*In re Drexel Burnham Lambert Inc.*,
861 F.2d 1307 (2d Cir. 1988)....................19

*Gullet-el v. United States*,
2024 WL 4771469 (D.D.C. Nov. 13, 2024) ....................10, 13

*Hamrick v. Hoffman*,
550 F. Supp. 2d 8 (D.D.C. 2008)....................11, 23

*In re Hawsawi*,
955 F.3d 152 (D.C. Cir. 2020)....................13, 22

*HRH Servs., LLC, et al. v. Travelers Indem. Co.*,
2024 WL 5246521 (D.D.C. Dec. 30, 2024)....................27

**Huebner v. Midland Credit Mgmt., Inc.*,
2015 WL 1966280 (E.D.N.Y. May 1, 2015) ....................15

*In re Hunt*,
2017 WL 6514686 (C.D. Cal. July 5, 2017)....................26

*Husayn v. Austin*,
2024 WL 4443740 (D.D.C. Oct. 8, 2024) ....................26, 27

**Jordan v. U.S. Dep't of Just.*,
315 F. Supp. 3d 584 (D.D.C. 2018)....................11, 22, 24

*Jud. Watch, Inc. v. Rossotti*,
2002 WL 31100839 (D.D.C. Aug. 2, 2002) ....................6

*In re Kan. Pub. Emps. Ret. Sys.*,
85 F.3d 1353 (8th Cir. 1996) ....................18, 19

*Kight v. Crunchy Tobacco, Inc.*,
2025 WL 1094214 (D.D.C. Apr. 11, 2025)....................26

*Klayman v. Judicial Watch, Inc.*,
2019 WL 3719008 (D.D.C. Aug. 7, 2019) ....................8, 11, 13, 22

*Klayman v. Judicial Watch, Inc.*,
744 F. Supp. 2d 264 (D.D.C. 2010)....................9, 24

*Klayman v. Porte*r,
2021 WL 1668067 (D.D.C. Apr. 28, 2021)....................5

*Lewis v. District of Columbia*,
791 F. Supp. 2d 136 (D.D.C. 2011)....................25

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
838 F.2d 1287 (D.C. Cir. 1988) ....................24

*Liljeberg v. Health Servs. Acquisition Corp.*,
486 U.S. 847 (1988) ....................21

*Litovich v. Bank of Am. Corp.*,
106 F.4th 218 (2d Cir. 2024) ....................21

*Mack v. Food Lion, LLC*,
791 F. Supp. 3d 632, 644 (E.D.N.C. 2025) ....................27

**Mavis v. Com. Carriers, Inc.*,
408 F. Supp. 55 (C.D. Cal. 1975) ....................18, 19

*McCann v. Commc'ns Design Corp.*,
775 F. Supp. 1535 (D. Conn. 1991) ....................16

*Microsoft Corp. v. United States*,
530 U.S. 1301 (2000) ....................16

*NAWA USA, Inc. v. Bottler*,
2007 WL 9760472 (D.D.C. Feb. 26, 2007) ....................26

**Osei v. Standard Chartered Bank*,
2019 WL 917998 (D.D.C. Feb. 25, 2019) ....................11, 22

*Perkins Coie LLP v. U.S. Dep't of Just.*,
775 F. Supp. 3d 431 (D.D.C. 2025) ....................13

*In re Placid Oil Co.*,
802 F.2d 783 (5th Cir. 1986) ....................16

*Precision Weather Sols. Inc. v. Farmers Edge Inc.*,
2023 WL 2158368 (4th Cir. Feb. 22, 2023) ....................16

*Priority One Servs., Inc. v. W & T Travel Servs., LLC*,
987 F. Supp. 2d 1 (D.D.C. 2013) ....................27

**Prunté v. Universal Music Grp., Inc.*,
699 F. Supp. 2d 15 (D.D.C. 2010) ....................6, 7

**Prunty v. Vivendi*,
130 F. Supp. 3d 385 (D.D.C. 2015) .................... *passim*

**Prunty v. Agency for Healthcare Admin.*,
2017 WL 3782790 (M.D. Fla. Aug. 31, 2017) ....................9, 16

*Prunty v. Vivendi*,
2015 WL 13696205 ....................................................................................................11

*Prunty v. Vivendi*,
2015 WL 13696206 ..............................................................................................10, 11

**In re Prunty*,
2016 U.S. App. LEXIS 2760 ....................................................................................6, 12

**In re Prunty*,
2016 U.S. App. LEXIS 2749 ..................................................................................1, 3, 6

*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980)...................................................................................................27

*Rote v. Comm. on Jud. Conduct & Disability of Jud. Conf. of U.S.*,
2019 WL 5789742 (D.D.C. Nov. 6, 2019) ...................................................................22

*S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.*,
740 F.2d 980 (D.C. Cir. 1984) ....................................................................................26

*Schneider v. Kissinger*,
412 F.3d 190 (D.C. Cir. 2005) ....................................................................................25

*SEC v. Bilzerian*,
729 F. Supp. 2d 19 (D.D.C. Nov. 1, 2010) ..................................................................13

*SEC v. Loving Spirit Found. Inc.*,
392 F.3d 486 (D.C. Cir. 2004) ..................................................................................9, 24

**Shao v. Roberts*,
2019 WL 249855 (D.D.C. Jan. 17, 2019).................................................9, 10, 15, 22

*In re Sherwin-Williams Co.*,
607 F.3d 474 (7th Cir. 2010) ......................................................................................13

*Strange v. Islamic Republic of Iran*,
46 F. Supp. 3d 78 (D.D.C. 2014) ..............................................................................8, 12

*Thorp v. District of Columbia*,
319 F. Supp. 3d 1 (D.D.C. 2018) ...............................................................................26

*Tripp v. Exec. Off. of President*,
196 F.R.D. 201 (D.D.C. 2000) ......................................................................................5

*Tynan v. United States*,
376 F.2d 761 (D.C. Cir. 1967) ....................................................................................11

*United States v. Balistrieri*,
779 F.2d 1191 (7th Cir. 1985) ....................28

*United States v. Choi*,
818 F. Supp. 2d 79 (D.D.C. 2011) ....................28

*United States v. Farkas*,
149 F. Supp. 3d 685 (E.D. Va. 2016) ....................13, 22

*United States v. Hanrahan*,
248 F. Supp. 471 (D.D.C. 1965) ....................10

*United States v. Marin*,
662 F. Supp. 2d 155 (D.D.C. 2009) ....................14

*United States v. Nixon*,
267 F. Supp. 3d 140 (D.D.C. 2017) ....................13, 15, 22

*United States v. Pappert*,
1 F. App'x 767 (10th Cir. 2001) ....................21

*United States v. Pope*,
2025 WL 2105571 (D.D.C. July 28, 2025) ....................27

*United States v. Volvo Const. Equip. AB*,
922 F. Supp. 2d 67 (D.D.C. 2013) ....................5

*United States v. Williamson*,
903 F.3d 124 (D.C. Cir. 2018) ....................11, 23

*Watford v. LaFond*,
725 F. App'x 412 (7th Cir. 2018) ....................9

*Wilderness Soc'y v. Bernhardt*,
2020 WL 2849635 (D.D.C. June 2, 2020) ....................6

**Statutes**

5 U.S.C. § 13104(f)(8) ....................21

28 U.S.C. § 144 ....................8, 10, 11, 24

28 U.S.C. § 455 ....................15, 16, 21, 24

**Court Rules**

Fed. R. Civ. P. 7(b)(1)(B) ....................25, 26

**Other Authorities**

*Activision Blizzard Announces Transformative Purchase Of Shares From Vivendi And New Capital Structure*, Activision Blizzard (July 25, 2013), https://investor.activision.com/news-releases/news-release-details/activision-blizzard-announces-transformative-purchase-shares; Press Release, *Sierra Is Back!!!*, Activision Blizzard (Aug. 12, 2014), https://investor.activision.com/news-releases/news-release-details/sierra-back ....................17

Committee on Codes of Conduct, *Advisory Op. No. 106*, 2B Guide to Jud. Pol'y, Ch. 2, at 204 ....................17

Form 10-Q, Wells Fargo & Company (Aug. 5, 2015), https://www.sec.gov/Archives/edgar/data/72971/000007297115000607/wfc-06302015x10q.htm ....................20

## INTRODUCTION

Plaintiff asks the Court to recuse itself from this, his third lawsuit involving claims predicated on misplaced allegations of copyright infringement. *See* ECF No. 38 (Pl.'s Refiled 144/455 Mot.). Plaintiff also asks the Court to recuse judges from two prior cases brought in this District. *See id*. In support of this motion (the "Motion"), Plaintiff alleges that all three Judges conspired with Defendants to conceal disqualifying financial interests and rule against Plaintiff. *See id.* at 4 ("[E]ach time Plaintiff tried to vindicate his rights at Court, another Judicial member of the Vivendi/UMG Alliance would also show up.").[1]

Plaintiff has made claims like these before. After Judge Friedman dismissed his initial copyright claims, Plaintiff filed a lawsuit asserting that Judge Friedman had conspired with Defendants to conceal disqualifying financial interests. *See* ECF No. 7-5 (Pl.'s 2014 Compl.) at 10, 37. That argument was rightly rejected because it had no basis in fact or law. *See Prunty v. Vivendi*, 130 F. Supp. 3d 385, 389-90 (D.D.C. 2015) ("*Prunty II*"). And it was summarily rejected again when Plaintiff brought his theory before the D.C. Circuit. *In re Prunty*, 2016 U.S. App. LEXIS 2749, at *1 (D.C. Cir. Feb. 17, 2016) (denying mandamus petition). Nothing has changed. Plaintiff's allegations do not call into question any judge's impartiality or judicial ethics. The Motion should be denied with prejudice.

## FACTS

In 2006, Plaintiff sued UMG (alongside numerous other defendants). Plaintiff claimed that

---

[1] The Motion references various entities, but does not explain the nature of the financial interest each Judge publicly disclosed in relation to those entities. *See generally* ECF No. 38 (Pl.'s Refiled 144/455 Mot.). Plaintiff submitted with a previous iteration of the Motion documents identified as the financial disclosures for Judges Friedman, Mehta, and Kelly. *See* ECF Nos. 16-1, 17-1 (exhibits filed alongside Plaintiff's original motion for recusal, which Plaintiff later withdrew). To assist the Court in considering the Motion, the attached Appendix identifies where the entities appear in the challenged financial disclosures that Plaintiff filed.

popular music artists had infringed his copyrights in certain songs. *See Prunté v. Universal Music Grp., Inc.*, 699 F. Supp. 2d 15, 18 (D.D.C. 2010) ("*Prunty I*").[2] Jenner appeared in the case as counsel for defendants. *Id.* Judge Friedman presided over the suit, dismissing the majority of Plaintiff's claims in 2007, and granting summary judgment for the defendants as to the remainder in 2010. *See id.*; *Prunté v. Universal Music Grp.*, 484 F. Supp. 2d 32, 42 (D.D.C. 2007). The D.C. Circuit affirmed, holding that "the lyrics of the allegedly infringing songs were not substantially similar to protectible elements of [Plaintiff's] works." *Prunte v. Universal Music Grp., Inc.*, 425 F. App'x 1, 1-2 (D.C. Cir. 2011).

In 2014, Plaintiff again sued UMG and several of its affiliates, including UMG's then parent company Vivendi. This time, Plaintiff also named Jenner as a defendant, claiming that Jenner had conspired with UMG, its affiliates, and Judge Friedman to "hide from [Plaintiff] Judge Friedman's alleged financial interest in Defendants Vivendi SA and [UMG]." *Prunty II*, 130 F. Supp. 3d at 388-89; *see* ECF No. 7-5 (Pl.'s 2014 Compl.). Judge Mehta presided over the action, dismissing the complaint in its entirety, and finding (among other things) that Plaintiff's allegations of a conspiracy were "fanciful" and "fantastic." *Prunty II*, 130 F. Supp. 3d at 389. Judge Mehta also explained that even if Plaintiff's claims of financial connections between Judge Friedman and the defendants were true—specifically, that Judge Friedman held financial interests in mutual funds which in turn held securities in one or more of the defendant companies—they would not give rise to any suggestion of impropriety, because "a federal judge's ownership of a mutual fund that happens to own stock in a party appearing before the court does not constitute a 'financial interest' in a party" under applicable ethics rules. *Id.* at 389 n.4.

---

[2] "The Court may take judicial notice of the dockets in other judicial proceedings" for "facts on the public record." *Beberman v. Rubio*, 2025 WL 2531870, at *4, n.2 (D.D.C. Sept. 3, 2025) (Kelly, J.) (citation omitted).

Plaintiff next filed two motions accusing Judge Mehta of bias in favor of the defendants, citing a footnote in which Judge Mehta wrote that he was a fan of hip-hop music. The court denied both motions. *Prunty v. Vivendi*, 2015 WL 13696206, at *1 (D.D.C. Oct. 21, 2015); *Prunty v. Vivendi*, 2015 WL 13696205, at *1 (D.D.C. Nov. 18, 2015).

Plaintiff pursued his claims that Judges Mehta and Friedman were biased against him through mandamus petitions to the D.C. Circuit. The D.C. Circuit denied the petitions as meritless because Plaintiff did not demonstrate any reason to suspect impropriety or bias on the part of either Judge. *In re Prunty*, 2016 U.S. App. LEXIS 2749, at *1 (denying petition to reopen *Prunty I*); *In re Prunty*, 2016 U.S. App. LEXIS 2760, at *1 (D.C. Cir. Feb. 17, 2016) (denying petition to reopen *Prunty II*).

Almost a decade later, on July 14, 2025, Plaintiff filed another complaint against UMG and Jenner. ECF No. 1 (Compl.). In his Complaint, as amended, Plaintiff reiterates that there exists a "secret alliance" between Jenner, UMG, and various Judges, apparently for the purpose of dismissing his copyright claims. *See, e.g.*, ECF No. 3 (Am. Compl.) ¶ 5; *see* also ECF No. 7-3 (alternate version of Complaint served on Jenner). Jenner and UMG have both moved to dismiss the Amended Complaint. ECF No. 7 (Jenner MTD); ECF No. 19 (UMG MTD).

After Defendants filed their motions to dismiss, Plaintiff filed numerous motions seeking extensive relief. *See* ECF Nos. 13, 15, 16, 17, 28. Plaintiff withdrew most or all of those motions after Defendants submitted their oppositions, ECF No. 29 (Pl.'s Withdrawal),[3] only to file revised

[3] Plaintiff filed a withdrawal notice stating Plaintiff withdrew "Dockets 13, 16 & 17 . . . [as well as] the Motion seeking Leave to Amend Complaint." See ECF No. 29 (Pl.'s Withdrawal) at 1. Plaintiff may have also intended to withdraw his motion filed at ECF No. 15, which is referenced in the title of Plaintiff's withdrawal notice, but not in its text. *Id.* If the Court determines that any of Plaintiff's motions were not properly withdrawn, they are meritless and should be denied. *See generally* ECF No. 25 (Jenner Opp. Br.); ECF No. 26 (UMG Opp. Br.).

motions making similar arguments and seeking similar relief, *see* ECF Nos. 34, 37, 38, 41, and new motions predicated on similar facts, *see* ECF Nos. 35, 36. In all of these motions, including the Motion under 28 U.S.C. §§ 144 and 455 to which this submission responds, *see* ECF No. 38 (Pl.'s Refiled 144/455 Mot.), Plaintiff seeks varied relief based on allegations that Judge Friedman, Judge Mehta, and this Court concealed financial interests in entities that Plaintiff says were identified in financial disclosures and allegedly had some connection to UMG's former parent company, Vivendi. *See, e.g.*, ECF No. 17 (Pl.'s 144/455 Mot.) at 7; ECF No. 34 (Pl.'s Emergency Mot.) at 2; ECF No. 35 (Pl.'s Venue Mot.) at 2; ECF No. 36 (Pl.'s 12(c) Mot.) at 46; ECF No. 37 (Pl.'s Mot. to Amend) at 2-16; ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 2; ECF No. 41 (Pl.'s Mot. to Correct Fraud) at 6, 17. After Defendants pointed out, in their original oppositions to Plaintiff's motions, that any alleged link between this Court's financial interests and Vivendi is irrelevant because Vivendi is not a parent company of any party to the case, *see* ECF No. 25 (Jenner Opp. Br.) at 25; ECF No. 26 (UMG Opp. Br.) at 21-22, Plaintiff filed a motion for leave to amend the Amended Complaint which seeks to add Vivendi as a defendant. ECF No. 37-1 (Proposed Second Am. Compl.) at 1.

On January 15 and 16, 2026, this Court issued minute orders requesting that Defendants submit briefing in response to Plaintiff's Motion under 28 U.S.C. §§ 144 and 455, and concerning whether this case is related to Plaintiff's prior lawsuits. The Court's minute orders additionally stayed Defendants' briefing deadlines with respect to Plaintiff's other pending motions, and prohibited Plaintiff from continuing to file motions on the docket without the Court's approval.

## ARGUMENT

### I. This Case Is Not "Related" To Plaintiff's Prior Lawsuits Within The Meaning Of Local Rule 40.5.

In a January 16, 2026 Minute Order, the Court instructed Defendants to brief whether this

case is related to Plaintiff's 2006 lawsuit, No. 06-cv-480, or Plaintiff's 2014 lawsuit, No. 14-cv-2073, under Local Civil Rule 40.5. Both cases are related to this one in the sense that Plaintiff is attempting to relitigate the claims he advanced in those cases. *See, e.g.*, ECF No. 3 (Am. Compl.) ¶¶ 2-4, 4c, 6-9 (complaining about rulings in prior lawsuits); ECF No. 38-1 (Pl.'s 144/455 Aff.) at 9-10 (same); ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 7 (demanding "a New Hearing and Copyright Action"). However, neither case fits the criteria for relatedness set forth in the Local Rules.

The general rule is that new cases are randomly assigned. *See* Local Rule 40.3(a). Local Rule 40.5 provides an exception to this general rule, but it is not a "wide-ranging exemption." *Tripp v. Exec. Off. of President*, 196 F.R.D. 201, 202 (D.D.C. 2000). "The party requesting related-case designation and seeking to avoid random assignment"—here Mr. Prunty—"bears the burden of showing that the cases are related under a provision of Local Civil Rule 40.5." *United States v. Volvo Const. Equip. AB*, 922 F. Supp. 2d 67, 68 (D.D.C. 2013) (quoting *Autumn Journey Hospice, Inc. v. Sebelius,* 753 F. Supp. 2d 135, 140 (D.D.C. 2010)). Courts have noted this burden is "heavy." *Klayman v. Porte*r, 2021 WL 1668067, at *1 (D.D.C. Apr. 28, 2021).

Under Local Rule 40.5, a civil case may be considered related to a prior case under two sets of circumstances. ***First***, cases are related under Local Rule 40.5(a)(3) when (1) the earlier case is "still pending on the merits" and (2) either the cases share key factual similarities or both cases were brought by the same *pro se* plaintiff. Plaintiff's two prior lawsuits are not related to this case under Local Rule 40.5(a)(3) because neither of the two prior lawsuits remains pending on the merits. *See Prunty I*, 699 F. Supp. 2d 15 (granting summary judgment for Defendants on Plaintiff's remaining claims in 2006 lawsuit), *aff'd*, 425 F. App'x 1 (D.C. Cir. 2011); *In re Prunty*, 2016 U.S. App. LEXIS 2749, at *1 (denying petition to reopen *Prunty I*); *Prunty II*, 130 F. Supp.

3d 385 (dismissing Plaintiff's 2014 complaint); *In re Prunty*, 2016 U.S. App. LEXIS 2760, at *1 (denying petition to reopen *Prunty II*).

***Second***, under Local Rule 40.5(a)(4), cases "shall be deemed related where a case is dismissed, with prejudice or without, and a second case is filed involving the same parties and relating to the same subject matter." This District interprets the phrase "the same parties" in Local Rule 40.5(a)(4) to require that the parties be identical. *Wilderness Soc'y v. Bernhardt*, 2020 WL 2849635, at *1 (D.D.C. June 2, 2020); *Dale v. Exec. Off. of President*, 121 F. Supp. 2d 35, 37 (D.D.C. 2000); *Jud. Watch, Inc. v. Rossotti*, 2002 WL 31100839, at *1 (D.D.C. Aug. 2, 2002) (noting the "same parties" requirement has been "interpreted strictly"). Jenner was not named a defendant in Plaintiff's 2006 lawsuit, so that case is not related to this one under Local Rule 40.5(a)(4). *See* ECF No. 7-4 (Pl.'s 2006 Compl.). Defendants UMG and Jenner were both named as defendants in Plaintiff's 2014 lawsuit, which also involved related subject matter, but that lawsuit also involved additional defendants. *See* ECF No. 7-5 (Pl.'s 2014 Compl.). Accordingly, because Plaintiff's two prior cases did not involve "the same parties" as this case within the meaning of Local Rule 40.5(a)(4), the cases are not related under that rule.

## II. Plaintiff's Motion Under 28 U.S.C. §§ 144 And 455 Fails As A Matter Of Fact And Law.

Plaintiff presents no evidence that reasonably calls into question the impartiality of this Court, Judge Mehta, or Judge Friedman. The Motion is also procedurally flawed. It should be denied with prejudice.

### A. Plaintiff's Allegations Concerning This Court's Public Financial Disclosures, And Those Of Judges Friedman And Mehta, Do Not Support Any Suggestion Of Impropriety.

The Motion is grounded in Plaintiff's claim that this Court, Judge Friedman, and Judge Mehta have held "and actively concealed Financial Interests in Vivendi/UMG, for nearly (20)

years." ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 2; *see also* ECF No. 38-1 (Pl.'s 144/455 Aff.) at 9 (complaining of "Judges making misleading statements in their Public Financial Disclosures, which were expressed in one way to cloak the true Vivendi Financial Interests, and avoid instant judicial disqualification had the truth been revealed"). Plaintiff further claims that, as a result of their purported financial interests, all three Judges were and are "secretly bribed" and on the "'money roster'" of Vivendi/UMG. ECF No. 38 (Pl.'s Refiled 144/455 Mot.). at 4; *see also* ECF No. 38-1 (Pl's 144/455 Aff.) at 11 (claiming "Vivendi hired Judges appear to follow Plaintiff in all its actions").[4]

Fundamentally, the Motion turns on whether judges who have presided (or are presiding) over Plaintiff's lawsuits were required to recuse themselves based on their publicly disclosed financial holdings. The Motion invokes 28 U.S.C. §§ 144 and 455, which govern recusal of federal court judges. *See* ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 1. Plaintiff's allegations do not meet the substantial burden imposed by Sections 144 and 455 because of several (independent) factual and legal deficiencies. Recusal was not required in Plaintiff's previous cases and is not required in this one. The Motion should be denied with prejudice.

1. <u>Plaintiff's Section 144 Affidavit Is Legally Insufficient To Require Recusal.</u>

To the extent Plaintiff's Motion can be viewed as seeking to force this Court (and Judges Friedman and Mehta) to recuse under 28 U.S.C. § 144, *see* ECF No. 38-1 (Pl.'s 144/455 Aff.) at 1, the request fails to satisfy the procedural requirements to obtain such relief, is meritless, and should be denied.

28 U.S.C. § 144 provides, in relevant part, as follows:

[4] Plaintiff's bias claim against Judge Friedman has been fully litigated and rejected. *See Prunty II*, 130 F. Supp. 3d at 388-89; *In re Prunty*, 2016 U.S. App. LEXIS 2749, at *1 (D.C. Cir. Feb. 17, 2016) (denying petition to reopen *Prunty I*).

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

The judge about whom a Section 144 motion and supporting affidavit are filed is generally responsible for evaluating whether the filing is "timely and legally sufficient." *Klayman v. Judicial Watch, Inc.*, 2019 WL 3719008, at *3 (D.D.C. Aug. 7, 2019) (citing *United States v. Haldeman*, 559 F.2d 31, 131 (D.C. Cir. 1976)); *see Berger v. United States*, 255 U.S. 22, 36 (1921). To be legally sufficient, (1) the affidavit must be accompanied by a certificate of good faith from counsel of record; (2) it must contain facts stated with sufficient particularity; and (3) those facts must be sufficient to convince a reasonable person that the judge *actually does* harbor bias that would prevent the judge from presiding over the case impartially. *Strange v. Islamic Republic of Iran*, 46 F. Supp. 3d 78, 81-82 (D.D.C. 2014). "Obviously, such a showing could rarely be made." *Id.* (quoting *United States v. Hanrahan*, 248 F. Supp. 471, 476 (D.D.C. 1965)); *see Ex parte Am. Steel Barrel Co.*, 230 U.S. 35, 43-44 (1913) (disqualification under predecessor to Section 144 is only applicable "in those rare instances in which the affiant is able to state facts which tend to show not merely adverse rulings already made, which may be right or wrong, but facts and reasons which tend to show personal bias or prejudice").

Here, Plaintiff accompanied his Motion with an "Interpolated Notice And Affidavit In Support And Motion Filed Under 28 U.S.C. 144 & 28 U.S.C. 455 . . . ." ECF No. 38-1 (Pl.'s

144/455 Aff.). Assuming this is intended to be the affidavit supporting Plaintiff's Motion, it satisfies none of Section 144's requirements.

Initially, the affidavit is insufficient because it attaches no certificate of good faith from counsel of record. The certificate of counsel is "not simply a pro forma procedural obligation but is key to the integrity of the recusal process" and a fundamental safeguard against abuse of that process. *Klayman v. Judicial Watch, Inc.*, 744 F. Supp. 2d 264, 273 (D.D.C. 2010); *see Loving Spirit Found.*, 392 F.3d at 496. Indeed, because of the potential for abuse, courts do not allow *pro se* parties (like Plaintiff) to certify that Section 144 affidavits are submitted in good faith. *See, e.g.*, *Watford v. LaFond*, 725 F. App'x 412, 414 (7th Cir. 2018); *Klayman*, 744 F. Supp. 2d at 274; *Shao v. Roberts*, 2019 WL 249855, at *4 (D.D.C. Jan. 17, 2019), *aff'd*, 2019 WL 3955710 (D.C. Cir. July 31, 2019). The absence of the certificate requires the Court to deny Plaintiff's Motion to the extent it is brought under Section 144. *See Prunty v. Agency for Healthcare Admin.*, 2017 WL 3782790, at *2 (M.D. Fla. Aug. 31, 2017) (denying this Plaintiff's Section 144 motion on the same basis, among others).[5]

Plaintiff's Motion is also the second time he has invoked Section 144 in this case, and at least the third time he has moved to disqualify Judge Mehta from presiding over his 2014 lawsuit. *See* ECF No. 17 (Pl.'s 144/455 Mot.); *Prunty v. Vivendi*, 2015 WL 13696206. But the statute explicitly allows only one such motion per case. 28 U.S.C. § 144. This is an independently sufficient reason for denying the Motion. *See Shao*, 2019 WL 249855, at *4.

[5] Plaintiff complains that this Court should have ceased to rule on even procedural motions, such as Jenner's motion seeking leave to file an omnibus opposition to several of Plaintiff's simultaneously-filed motions, after Plaintiff filed his first motion citing Section 144. *See* ECF No. 38-1 (Pl.'s 144/455 Aff.) at 12. But Section 144 only calls for the immediate recusal of a judge presented with an affidavit that is, in addition to being timely and sufficient, "accompanied by certificate of counsel." *See Berger*, 255 U.S. at 33.

In any event, Plaintiff's affidavit is insufficient because it consists almost entirely of conclusions, not facts. *See Hanrahan*, 248 F. Supp. at 475 (Section 144 affidavit must set forth "identifying facts of time, place, persons, occasion and circumstances . . . with at least that degree of particularity one would expect to find in a bill of particulars"); *see also Gullet-el v. United States*, 2024 WL 4771469, at *6 (D.D.C. Nov. 13, 2024) (Section 144 affidavit was "clearly insufficient" where, instead of averring specific facts, it "merely conclude[d] that the Court is one of the many entities engaging in grievous violations of his rights based on his theories"). The first part of Plaintiff's supporting submission contains no references to evidence and instead summarizes legal concepts surrounding recusal. *E.g.*, ECF No. 38-1 (Pl.'s 144/455 Aff.) at 2-4 (listing citations); *id.* at 5 (bulleted list of "consequences" of alleged bias such as "Breach of Duty" and "Erodes Credibility"). The second part of the submission, titled "Start of Sworn Affidavit," repeats Plaintiff's conclusory allegations that "the Judges['] Public disclosures were actually mere **'cloaking devices'** designed to conceal and hide the secret Vivendi/UMG Financial Interests." *Id.* at 10 (emphasis in original); *see also id.* at 13 (stating "it is this Plaintiff['s] belief that" each judge "is 100 percent partial to Vivendi/UMG Financial Interests"); ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 5 (claiming conspiracy to defeat Plaintiff's claims had "the support of all Attorneys, all Defendants and all Judges in the case" (emphasis in original)). As explained in Section II(A)(3) *infra*, conclusory allegations of bias and conspiracy cannot substitute for evidence of facts giving rise to a reasonable inference that the judge is biased. *See Osei v. Standard Chartered Bank*, 2019 WL 917998, at *5 (D.D.C. Feb. 25, 2019); *Jordan v. U.S. Dep't of Just.*, 315 F. Supp. 3d 584, 593 (D.D.C. 2018).[6]

[6] Notably, Plaintiff now claims that Plaintiff developed his theory that Judge Mehta held disqualifying financial interests "in [or] around 2021." ECF No. 38-1 (Pl.'s 144/455 Aff.) at 10. This concession confirms that any motion under Rule 144 with respect to Judge Mehta would be

The submission also repeats Plaintiff's objections to rulings against him in prior cases. ECF No. 38-1 (Pl.'s 144/455 Aff.) at 10, 12 ("I complained about Judge Friedman . . . in 2015, and Judge Amit Mehta, the presiding Judge at the time, virtually ignored the matter and denied the motion. . . . Judge Friedman constantly ignored the Constitutional commands of the **Daubert Regime**" (emphasis in original)). Complaints about judicial rulings cannot provide a basis for disqualification under Section 144. *See, e.g.*, *United States v. Williamson*, 903 F.3d 124, 137 (D.C. Cir. 2018); *Am. Ctr. for Civ. Just. v. Ambush*, 680 F. Supp. 2d 21, 25-26 (D.D.C. 2010); *Hamrick v. Hoffman*, 550 F. Supp. 2d 8, 13 (D.D.C. 2008); *see also Berger*, 255 U.S. at 31 (predecessor to Section 144 was "never intended . . . to enable a discontented litigant to oust a judge because of adverse rulings" (citation omitted)); *Tynan v. United States*, 376 F.2d 761, 765 (D.C. Cir. 1967).

Plaintiff briefly references the idea that Judge Mehta should be viewed as "culpabl[e]" because he commented on his fondness for hip-hop music. ECF No. 38-1 (Pl.'s 144/455 Aff.) at 12 (accusing Judge Mehta of "vouching for Jay-Z and Kanye West," apparently referencing *Prunty II*, 130 F. Supp. 3d at 390 n.5 (emphasis omitted)). But as Judge Mehta and the D.C. Circuit have both already concluded, this comment did not give rise to any reasonable question as to Judge Mehta's impartiality. *Prunty v. Vivendi*, 2015 WL 13696206, at *1; *Prunty v. Vivendi*, 2015 WL 13696205, at *1; *In re Prunty*, 2016 U.S. App. LEXIS 2760, at *1. Indeed, Plaintiff is collaterally estopped from raising the issue again. *See* ECF No. 7-1 (Jenner MTD Br.) at 22-23; ECF No. 19-1 (UMG MTD Br.) at 18-19.

Finally, Plaintiff references a document titled "Exhibit F-F," which lists without evidence purported connections between entities that issued securities identified in the Judges' financial

---

untimely even if filed in the proper (closed) case. *See, e.g.*, *Klayman*, 2019 WL 3719008, at *7 ("Circuit precedent suggests that as few as two weeks may be too slow for a Section 144 motion . . . ."). Any motion under Rule 144 with respect to Judge Friedman is similarly untimely.

disclosures and UMG's former parent company Vivendi. *See* ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 8-26 ("Exhibit F-F" appears here on the Court's docket). As explained in Section II(A)(3) *infra*, none of the alleged connections to Vivendi would suggest that any Judge has or had a financial interest in Plaintiff's lawsuits within the meaning of Section 455, much less that any Judge is or was actually biased against Plaintiff within the meaning of Section 144.

Simply put, these averments do not (and cannot) convince a reasonable person that any of the Judges in question "in fact harbor the personal bias or prejudice contemplated by the statute." *Strange*, 46 F. Supp. 3d at 82 (quoting *Hanrahan*, 248 F. Supp. at 475-76).

2. <u>Plaintiff Must Present Clear And Convincing Evidence To Overcome the Presumption Against Recusal Under Section 455(b).</u>

Section 455 provides, in relevant part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> . . .
>
> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding; . . .

For purposes of Section 455(a), "recusal is required when a reasonable and informed observer would question the judge's impartiality." *Klayman*, 2019 WL 3719008, at *2 (cleaned up) (quoting *SEC v. Loving Spirit Found. Inc.*, 392 F.3d 486, 493 (D.C. Cir. 2004)). "That an unreasonable person, focusing on only one aspect of the story, might perceive a risk of bias is irrelevant." *In re Sherwin-Williams Co.*, 607 F.3d 474, 477 (7th Cir. 2010).

The recusal analysis here is not governed by Section 455(a). Rather, it is governed by

Section 455(b). Why? Because when an issue concerning impartiality falls "within the scope of [S]ection 455(b)" and Section 455(b) would not require disqualification, "Section 455(a) should not be read to require" recusal. *In re Hawsawi*, 955 F.3d 152, 159-60 (D.C. Cir. 2020). Plaintiff's allegations focus on each judge's financial interests. *See* ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 8-26 (listing purported "secret and concealed" financial interests disclosed by this Court and Judges Mehta and Friedman). That issue is squarely addressed by Section 455(b)(4). Accordingly, Section 455(b)(4) governs the recusal analysis. *United States v. Farkas*, 149 F. Supp. 3d 685, 698 (E.D. Va. 2016).

Because potential abuse of the recusal statute poses a significant threat to the judicial system, *see SEC v. Bilzerian*, 729 F. Supp. 2d 19, 22 (D.D.C. Nov. 1, 2010), courts do not lightly grant motions to recuse. Instead, courts apply a presumption against disqualification. *United States v. Nixon*, 267 F. Supp. 3d 140, 146-47 (D.D.C. 2017). The movant's burden to overcome that presumption with proof of bias is substantial. *Id.*; *Ambush*, 680 F. Supp. 2d at 25; *see also Perkins Coie LLP v. U.S. Dep't of Just.*, 775 F. Supp. 3d 431, 435 (D.D.C. 2025) ("This statute sets a high bar under which 'recusal must be limited to truly extraordinary cases.'" (quoting *Cobell v. Kempthorne*, 455 F.3d 317, 332 (D.C. Cir. 2006))). The movant must present "clear and convincing evidence" that disqualification is required. *Gullet-el*, 2024 WL 4771469, at *3. "'[B]ald allegations of bias or prejudice' do not suffice." *Klayman*, 2019 WL 3719008, at *2 (quoting *Karim-Panahi v. U.S. Cong., Senate & House of Representatives*, 105 F. App'x 270, 275 (D.C. Cir. 2004) (per curiam)); *see also United States v. Marin*, 662 F. Supp. 2d 155, 158 (D.D.C. 2009) ("A judge need not . . . recuse himself [under Section 455] because of unsupported, irrational, or highly tenuous speculation." (citation and internal quotation marks omitted)). And

judges considering a motion under Section 455 need not accept the facts alleged by the movant as true. *Doe v. Cabrera*, 134 F. Supp. 3d 439, 445 (D.D.C. 2015).

3. Plaintiff's Unsupported Allegations Provide No Evidence of Bias and Certainly Do Not Overcome the Presumption Against Recusal.

Plaintiff's allegations do not meet the substantial burden imposed by Section 455 because of several (independent) factual and legal deficiencies.[7]

***First***, the Motion alleges the existence of disqualifying "financial interests," which are primarily based on the supposed connection between large issuers of mutual funds and ETFs, on the one hand, and UMG's former parent company Vivendi, on the other hand. *See* ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 8-26 (listing purported connections between entities noted in judges' financial disclosures and Vivendi). As a factual matter, Plaintiff's unsupported allegations concerning the Judges' financial interests—even assuming *arguendo* that they are true—do not establish that any of the specific funds in which the Judges disclosed investments, and which were issued by the entities listed in Plaintiff's briefs, ever had exposure to Vivendi. Even if Plaintiff had established that fact, the allegations do not demonstrate that any funds held any Vivendi shares when the Judges held those funds. If Plaintiff means to suggest that connections between Vivendi and these financial institutions were so pervasive and substantial, and his claim would be so deleterious to Vivendi, that a judgment in his favor would jeopardize the existence of these large financial institutions and thereby impact the Judges' interests in funds or retirement accounts, Plaintiff has offered no evidence to support such claims. Without establishing any of these facts, Plaintiff's Motion fails to prove the existence of any connection between Vivendi's performance

[7] Both Jenner and UMG have previously responded to substantially similar allegations raised by Plaintiff. *See* ECF No. 25 (Jenner Opp. Br.) at 14-34; ECF No. 26 (UMG Opp. Br.) at 21-24. The arguments Defendants raised in their prior submissions are equally applicable to the Motion.

and any judge's financial interests. *See Prunty II*, 130 F. Supp. 3d at 389.[8]

***Second***, as a legal matter, when judges hold financial interests in diversified assets like mutual funds or ETFs, they are not required to recuse themselves based on securities held by those assets. This is because, for purposes of recusal rules, "the law is quite clear that a judge who owns shares in a mutual fund or ETF does not thereby own the securities held by those mutual funds or ETFs." *Huebner v. Midland Credit Mgmt., Inc.*, 2015 WL 1966280, at *2 (E.D.N.Y. May 1, 2015), *aff'd*, 897 F.3d 42 (2d Cir. 2018); *see* 28 U.S.C. § 455(d)(4) (confirming that judges are not disqualified based on ownership in a "mutual or common investment fund that owns securities"); Code of Conduct for U.S. Judges, Canon 3(C)(3)(c)(i) (same). Indeed, these indirect connections to underlying securities are "not [considered to be] financial interest[s] at all." *Huebner*, 2015 WL 1966280, at *3.[9] Similarly, a judge's passive investment in a retirement account which holds securities also does not constitute a "financial interest" in those securities requiring recusal. *See Cent. Tel. Co. of Va. v. Sprint Commc'ns Co. of Va.*, 715 F.3d 501, 516 (4th Cir. 2013); *de Botton v. Quality Loan Serv. Corp. of Wash.*, 2024 WL 458277, at *2 (W.D. Wash. Jan. 10, 2024) (judge had no financial interest in retirement account holdings for purposes of Section 455). Nor are

---

[8] As Defendants pointed out in their prior omnibus opposition filings, Vivendi is no longer the parent company of any party to this case, so Plaintiff's allegations pertaining to this Court are also irrelevant. *See* ECF No. 25 (Jenner Opp. Br.) at 25; ECF No. 26 (UMG Opp. Br.) at 21-22. Plaintiff responded by seeking to add Vivendi as a defendant. ECF No. 37-1 (Proposed Second Am. Compl.). Adding a defendant to secure recusal is improper. *Cf. Nixon*, 267 F. Supp. 3d at 146 (parties must not be permitted to manufacture recusal and thereby delay proceedings); *Shao*, 2019 WL 249855, at *5 (noting disqualification is unwarranted "where a plaintiff amends a complaint to add the assigned judge as a defendant in an attempt at judge-shopping").

[9] Defendants pointed out this rule in their prior oppositions to Plaintiff's motions. *See* ECF No. 25 (Jenner Opp. Br.) at 17-18; ECF No. 26 (UMG Opp. Br.) at 16-17, 23. In the current filings, Plaintiff repeatedly claims that the entities issuing the investment vehicles are not ETFs and mutual funds. *See, e.g.*, ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 8-26. This misses the point. The recusal analysis turns on the financial assets a judge holds, not the entities that issue those assets. A majority of the investment vehicles identified are ETFs and mutual funds. And as explained below, the remaining investments also cannot support recusal.

judges' ordinary bank accounts potentially disqualifying financial interests. *Precision Weather Sols. Inc. v. Farmers Edge Inc.*, 2023 WL 2158368, at *4 (4th Cir. Feb. 22, 2023) (per curiam); *Arunachalam v. Int'l Bus. Machines Corp.*, 2016 WL 5403592, at *1 (D. Del. Sept. 26, 2016), *aff'd*, 759 F. App'x 927 (Fed. Cir. 2019). As such, these financial interests are not cause for a judge to recuse as a matter of law. *See Prunty v. Agency for Healthcare Admin.*, 2017 WL 3782790, at *3 (denying this Plaintiff's recusal motion on this basis); *Prunty II*, 130 F. Supp. 3d at 389-90 & n.4 (rejecting claim that Judge Friedman was biased against Plaintiff on same basis).

***Third***, the types of connections Plaintiff alleges, even if they could be proven, would not establish that the Judges' interests could be "substantially affected" by the outcome of Plaintiff's lawsuits against UMG or Vivendi. 28 U.S.C. § 455(b)(4). Judges are not disqualified from presiding over cases based on remote, indirect, or speculative connections and interests. *Armenian Assembly of Am., Inc. v. Cafesjian*, 783 F. Supp. 2d 78, 92 (D.D.C. 2011) (collecting cases), *aff'd*, 758 F.3d 265 (D.C. Cir. 2014); *cf. Microsoft Corp. v. United States*, 530 U.S. 1301, 1301-03 (2000) (statement of Rehnquist, C.J.); *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 777 (10th Cir. 2011) (fact that judge's spouse's law firm had done unrelated legal work for a party did not constitute a disqualifying financial interest in that party); *In re Placid Oil Co.*, 802 F.2d 783, 786-87 (5th Cir. 1986) (judge's investment in a bank did not require disqualification of the judge from a case that might affect the overall banking industry); *McCann v. Commc'ns Design Corp.*, 775 F. Supp. 1535, 1542-43 (D. Conn. 1991) (where university received donations from a party's affiliate, judge's trusteeship of university did not require recusal). If and to the extent they exist, the connections Plaintiff alleges are highly attenuated. For example, if a judge has an interest in a fund that owns shares of Vivendi among hundreds of other, irrelevant securities, it does not follow that a ruling or judgment adverse to one of Vivendi's subsidiaries, or former subsidiaries, could

substantially affect the judge's interest in the fund. It also does not follow that Judges Friedman or Mehta, had they been presented with these issues, would have exceeded their discretion by declining to recuse. *See generally* Committee on Codes of Conduct, *Advisory Op. No. 106*, 2B Guide to Jud. Pol'y, Ch. 2, at 204 ("Ultimately, the judge must decide the potential effect on his or her financial interest in the mutual fund.").

Plaintiff also identifies a handful of other indirect, attenuated interests. Even if the facts Plaintiff alleges about connections to Vivendi are true—and none of the connections Plaintiff alleges are supported by any evidence beyond say-so—none of the interests would be cause for disqualification. "Where a case involves remote, contingent, indirect or speculative interests, disqualification is not required." *Cafesjian*, 783 F. Supp. 2d at 92 (cleaned up).

For example, Plaintiff alleges that Judge Mehta was biased against him because Judge Mehta reported an interest in the video game retailer Gamestop, and Gamestop sold video games made by certain Vivendi subsidiaries unrelated to Plaintiff's copyright claims.[10] *See, e.g.*, ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 16-17 ("The relationship is simply that of a retailer selling a publisher's products."); ECF No. 16-1 (Pl.'s Exhibits) at 5. This allegation fails to raise suspicions of impropriety. Judge Mehta was not obligated to know of, much less disclose, the identities and corporate affiliations of all the arm's-length suppliers of all entities in which he

[10] The "subsidiaries" Plaintiff refers to, "Blizzard Entertainment" and "Sierra Entertainment," are both predecessor entities of Activision Blizzard, which Vivendi spun off as an independent company before Plaintiff filed his 2014 Complaint. *See generally* Press Release, *Activision Blizzard Announces Transformative Purchase Of Shares From Vivendi And New Capital Structure*, Activision Blizzard (July 25, 2013), https://investor.activision.com/news-releases/news-release-details/activision-blizzard-announces-transformative-purchase-shares; Press Release, *Sierra Is Back!!!*, Activision Blizzard (Aug. 12, 2014), https://investor.activision.com/news-releases/news-release-details/sierra-back. Therefore, neither company was actually a Vivendi subsidiary selling video games via Gamestop when Judge Mehta presided over Plaintiff's 2014 complaint.

owned securities. In any event, there is no evidence (nor is it plausible) that the results of Plaintiff's lawsuits against UMG would have impacted Judge Mehta's financial interests by way of his interest in Gamestop. Accordingly, this purported connection is far too attenuated to give rise to an obligation for a judge to recuse. *See Mavis v. Com. Carriers, Inc.*, 408 F. Supp. 55, 63 (C.D. Cal. 1975) (judge's interest in a company that did business with defendant's parent company was not disqualifying); *ClearOne Commc'ns, Inc*, 643 F.3d at 777; *cf. In re Kan. Pub. Emps. Ret. Sys.*, 85 F.3d 1353, 1362 (8th Cir. 1996) (refusing to "fashion a rule requiring judges to recuse themselves from all cases that might remotely affect nonparty companies in which they own stock").

The handful of other interests Plaintiff identifies that do not appear to be mutual funds, ETFs, or other categorically nonproblematic types of financial holdings have similarly attenuated alleged connections to Vivendi and/or UMG that do not compel recusal.

- Plaintiff notes that Judge Mehta held stock in Citigroup, *see* ECF No. 16-1 (Pl.'s Exhibits) at 4, and alleges that Citibank "provided key financial services to [Vivendi]" during "the company's 2000s debt crisis." *See, e.g.*, ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 14. Plaintiff does not provide any evidence of such a connection beyond bare assertions. The alleged connection also appears disconnected temporally from when Judge Mehta presided over Plaintiff's lawsuit. Regardless, this type of commercial connection does not suggest bias on Judge Mehta's part. *Mavis*, 408 F. Supp. at 63; *cf. In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1317 (2d Cir. 1988) (judge's spouse's stock ownership in entity that participated in transaction with a party did not require recusal absent a showing that litigation would "substantially affect" spouse's interest).

- The same is true of Plaintiff's reference to Judge Mehta's ownership of stock in the Walt Disney Corporation. *See* ECF No. 16-1 (Pl.'s Exhibits) at 4. Plaintiff claims Disney and a Vivendi subsidiary once had distribution agreements for Disney content that are apparently not connected to UMG in any manner, were inked after Judge Mehta's decisions in *Prunty II*, and were primarily intended to address the French market. ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 17-18.
- Plaintiff asserts that Walmart "has sold products from Vivendi" and has held "distribution deals" related to sales of Vivendi products. *Id.* at 18. Judge Mehta, who owned stock in Walmart, was not obligated to seek out, know, or disclose all distribution deals or sales made at the retailers in which he invested; any connection between the value of one of the world's largest retailers and the fortunes of one of its third-party suppliers in a copyright lawsuit is far too attenuated to raise concerns regarding bias. *See Mavis*, 408 F. Supp. at 63; *In re Kan. Pub. Emps. Ret. Sys.*, 85 F.3d at 1362.
- Plaintiff claims that Vivendi "collaborated" with General Electric to "form NBCUniversal" in 2004, and that the arrangement ended when General Electric "bought out" Vivendi's stake in 2011. ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 19. Judge Mehta, who disclosed ownership of General Electric stock, presided over Plaintiff's second lawsuit in 2015. *See Prunty II*, 130 F. Supp. at 388-89. Plaintiff does not and cannot explain how owning stock in General Electric nearly ten years after a business deal with Vivendi, and several years after Vivendi and General Electric severed ties, gave Judge Mehta a financial interest in the

litigation.[11]

- Plaintiff complains that this Court disclosed that it held bonds from GE Capital, on the basis that GE purportedly owned "entertainment assets" of Vivendi's during a transaction with Vivendi in the early 2000s. ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 23; *see* ECF No. 16-1 (Pl.'s Exhibits) at 44. This appears to be another reference to the NBCUniversal deal. Not only does this fail to establish that this Court has an interest in this litigation for the same reason just described, but Plaintiff identifies this interest in disclosures from between the years of 2017–2020, ECF No. 16-1 (Pl.'s Exhibits) at 41, nearly fifteen years after the NBCUniversal deal. Plaintiff again leaves unexplained how an interest in GE Capital bonds long after GE Capital and Vivendi's alleged business ties had lapsed could result in this Court possessing a financial interest in this litigation.

***Fourth***, apart from conclusory allegations of concealment and conspiracy, Plaintiff identifies no facts to support an inference that Judges Mehta or Friedman were even *aware* of the asserted connections between their financial holdings and Vivendi when they issued their rulings. A judge's decisions cannot be improperly influenced by financial interests of which the judge is

[11] Plaintiff also claims Judge Mehta had an interest in Wells Fargo. *See* ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 18. Plaintiff may be referring to one additional investment reported in Judge Mehta's 2015 financial disclosures, "Wells Fargo and co new del," the precise identity of which is not apparent on the face of the disclosures. *See* ECF No. 16-1 (Pl.'s Exhibits) at 4. The interest does not appear to be common stock in Wells Fargo, which at that time publicly traded under the name "Wells Fargo & Company." *See* Form 10-Q, Wells Fargo & Company (Aug. 5, 2015), https://www.sec.gov/Archives/edgar/data/72971/000007297115000607/wfc-06302015x10q.htm. Even if Plaintiff had presented evidence to support a claim that this interest was a stock interest in Wells Fargo, Plaintiff has failed to allege any meaningful connection between it and Vivendi or UMG that could result in Judge Mehta having a financial interest in the subject matter of his lawsuits. *See* ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 18 ("Wells Fargo and Vivendi have had various professional relationships over the years . . . . They are two distinct, large corporations in different primary industries").

unaware. The recusal statute recognizes this, prompting a judge to recuse only if the judge "knows that" he or she has a relevant interest that could be affected by the outcome. 28 U.S.C. § 455(b)(4); *see also id.* § 455(f); *see, e.g.*, *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859 (1988) (discussing Congress's "clear" intent to "require knowledge under subsection (b)(4)" of § 455); *Litovich v. Bank of Am. Corp.*, 106 F.4th 218, 226 (2d Cir. 2024) (Section 455(b)(4) does not trigger recusal obligations "[i]n the absence of actual knowledge" of a financial interest in the case); *United States v. Pappert*, 1 F. App'x 767, 769 (10th Cir. 2001) (same).

***Fifth***, contrary to Plaintiff's claim that the identified Judges and Defendants concealed the alleged financial connections to Vivendi, *see* ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 4 (describing the Judges as "concealing true Vivendi/UMG Financial Interests"), Plaintiff appears to derive his claims directly and entirely from the Judges' publicly filed financial disclosures. *See id.* ("The Vivendi/UMG financial interests were actively concealed by the Judges in their Public Financial Disclosures."). If Plaintiff means to argue that the Judges were required to report the investments held by any mutual funds or ETFs, Plaintiff misstates the law. Judges need not report financial interests that are held by diversified or publicly traded investment funds in their financial disclosures. *See* 5 U.S.C. § 13104(f)(8).

***Sixth***, Plaintiff makes unsupported allegations concerning the existence of a "secret alliance" between the Judges and Vivendi to "[s]ubvert justice." ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 3, 6. These accusations should be dismissed as "fanciful" and "frivolous." *Prunty II*, 130 F. Supp. 3d at 388-89. Indeed, it is well-established that "bald allegation[s] without evidentiary support" are insufficient to disqualify a presiding judge. *See Rote v. Comm. on Jud. Conduct & Disability of Jud. Conf. of U.S.*, 2019 WL 5789742, at *4 (D.D.C. Nov. 6, 2019) (internal citation omitted); *Klayman*, 2019 WL 3719008, at *2; *see also Nixon*, 267 F. Supp. 3d at

149 ("speculation cannot support [a] request for recusal"). Because Plaintiff's conclusory, unsupported allegations that the Judges were involved in a conspiracy to defeat his copyright claims "yield no evidence" of bias, such claims cannot provide the basis for recusal. *Jordan*, 315 F. Supp. 3d at 593; *see Osei*, 2019 WL 917998, at *5 (accusations of conspiracy between defendant and court "cannot stand as a basis for recusal . . . when no facts are offered that would fairly convince a . . . reasonable mind to question the Court's impartiality" (cleaned up) (internal quotation removed)), *aff'd*, 2019 WL 2563460 (D.C. Cir. June 4, 2019); *Shao*, 2019 WL 249855, at *5 (similar); *Baldyga v. United States*, 337 F. Supp. 2d 264, 270 (D. Mass. 2004) (plaintiff's "theories of conspiracy without facts to support them" did not constitute "*facts* sufficient to establish partiality or prejudice" (emphasis in original)).

***Seventh***, to the extent Plaintiff relies on Section 455(a), which provides for recusal where a reasonable person would question the presiding judge's impartiality, Plaintiff's claim fails for the same reasons.[12] There is no basis for questioning the Judges' impartiality based on Plaintiff's allegations concerning the Judges' publicly disclosed investments. Indeed, investments that are outside the scope of "financial interests" for the purposes of Section 455(b)(4) do not form an appropriate basis for arguing there is an appearance of impropriety warranting recusal under Section 455(a). *Farkas*, 149 F. Supp. 3d at 698; *see also Hawsawi*, 955 F.3d at 159-60. And Plaintiff's allegations do not otherwise provide a basis to question the impartiality of any of the Judges. The only *facts* Plaintiff alleges in support of his Motion (as distinct from conclusions and accusations) consist of the Judges' publicly disclosed financial holdings and the procedural history in his prior litigations. *See generally* ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 8-26

[12] Any claim under Section 455(a) also fails because that provision does not govern this Motion. *See supra* Section II(A.2); *see also Hawsawi*, 955 F.3d at 159-60; *Farkas*, 149 F. Supp. 3d at 698.

(summarizing alleged connections between Vivendi and entities mentioned in judges' disclosures); ECF No. 38-1 (Pl.'s 144/455 Aff.) at 9-11 (describing adverse decisions). To the extent Plaintiff intends to rely upon the Judges' rulings themselves, those do not afford a basis for questioning a judge's impartiality. *See Williamson*, 903 F.3d at 137 ("[L]egal disagreements with the district judge's rulings . . . do not afford grounds for a recusal."); *Ambush*, 680 F. Supp. 2d at 25; *Hamrick*, 550 F. Supp. 2d at 13.

Plaintiff has been on notice that these arguments would not provide him with a cognizable argument for renewal of his failed lawsuits since 2015. Plaintiff raised a version of these allegations against Judge Friedman as part of his 2014 complaint. *See* ECF No. 7-5 (Pl.'s 2014 Compl.) ¶¶ 36-42 (listing purported connections between entities in Judge Friedman's disclosures and Vivendi). In dismissing the allegations, Judge Mehta explained that Plaintiff had failed to show (1) that the funds "held individual stock of . . . any . . . of the defendant companies"; (2) that Judge Friedman held funds that held such stock in a defendant entity "*at the time* that [*Prunty I*] was being litigated"; and (3) that Defendants knew of, or in any way "conspired to conceal," any such interests. *Prunty II*, 130 F. Supp. 3d at 389-90. Judge Mehta also pointed out that the allegations "ignore[d]" the rules that preclude recusal based on stocks held by mutual funds and ETFs. *Id.* at 389 n.4. Here, Plaintiff's allegations suffer from these and other failings.

In sum, even if Plaintiff offered evidence in support of his claims (and he does not), none of those claims provide a basis for recusal under the governing or other provisions of Section 455.[13]

[13] To the extent Plaintiff is seeking relief under Section 144, his failure to show that recusal is justified even under Section 455 means his Section 144 claim also fails. *Klayman*, 744 F. Supp. 2d at 277 n.4 ("[A] failure to show an appearance of bias under section 455(a) invariably results in a failure to show actual bias under section 144."); *see also Jordan*, 315 F. Supp. 3d at 592 ("The substantive standard for finding 'personal bias or prejudice'" under these two statutes is "essentially the same." (cleaned up)).

Accordingly, Plaintiff has failed to demonstrate that this Court must recuse, and likewise fails to demonstrate that Judges Mehta and Friedman were required to recuse.

**B. Plaintiff's Motion Has No Legal Basis.**

While Plaintiff's Motion invokes the federal recusal statutes, the Motion calls for relief that does not include the Court's recusal. ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 6-7. Instead, Plaintiff demands varied relief that is not available under the recusal statutes: vacatur of prior rulings; sanctions against Defendants; "a New Hearing and Copyright Action"; restitution for purported unjust enrichment; and punitive damages. *Id.* at 7. This is largely the same relief Plaintiff requests in the Amended Complaint. *See* ECF No. 3 (Am. Compl.) ¶¶ 33-34, 36, 46, 66, 68.

Even if Plaintiff were entitled to such relief (he is not), the Motion would not be the proper vehicle for seeking it. Each of Plaintiff's requests for relief should be denied.

1. Damages, Sanctions, And Other Miscellaneous Relief Are Not Available Through A Motion Under Sections 144 Or 455.

Section 144 sets forth a mechanism by which a litigant may file a "timely and sufficient affidavit" demonstrating that the judge is biased, whereupon "another judge shall be assigned to hear such proceeding." 28 U.S.C. § 144; *see generally Loving Spirit Found.*, 392 F.3d at 492-93. Section 455 identifies the grounds upon which a judge should recuse himself or herself from hearing a pending matter. 28 U.S.C. § 455; *Loving Spirit Found.*, 392 F.3d at 493-94; *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1301 (D.C. Cir. 1988). Neither statute provides for damages, sanctions, or any of the other relief Plaintiff demands, let alone obtaining such relief by motion.[14] The Court should disregard these extraneous demands for relief.

[14] To the extent Plaintiff claims to be seeking relief other than the requests for relief explicitly listed in this Motion, such a contention would violate the command of Federal Rule of Civil

2. <u>Plaintiff Has Not Established Any Other Basis For The Relief Demanded.</u>

Plaintiff mentions a handful of other legal authorities in his Motion. For example, Plaintiff's affidavit in support of the Motion references the idea that the Due Process Clause plays a role in recusal. ECF No. 38-1 (Pl.'s 144/455 Aff.) at 2-4. These passing references cannot support Plaintiff's motion.

Because Plaintiff does not develop any argument that such legal authorities might apply, he may not rely upon them. Simply mentioning legal principles without explaining how Plaintiff contends they apply here does not provide Defendants with adequate notice of Plaintiff's position and does not suffice to raise any related arguments for consideration by this Court. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)); *see, e.g.*, *Cornish v. Dudas*, 715 F. Supp. 2d 56, 67 n.13 (D.D.C. 2010).

This result is compelled by Fed. R. Civ. P. 7(b)(1)(B), which requires that a motion "state with particularity the grounds for seeking the order," and by Local Rule 7(a), which similarly requires "a statement of the specific points of law and authority that support the motion." The purpose of these rules "is to ensure that the nonmovant and the court are provided notice of what is sought and the legal basis for the motion"; since those purposes are not accomplished where the motion brief consists of accusations and legal concepts that are not tethered by argument to the relief demanded, such motions are summarily denied. *Thorp v. District of Columbia*, 319 F. Supp.

---

Procedure 7(b) that a motion must "state the relief sought." *See generally* ECF No. 25 (Jenner Opp Br.) at 24 (collecting authorities). Any such argument would also be raised for the first time on reply and therefore should be disregarded. *Lewis v. District of Columbia*, 791 F. Supp. 2d 136, 139 n.4 (D.D.C. 2011).

3d 1, 20 (D.D.C. 2018), *aff'd*, 788 F. App'x 8 (D.C. Cir. 2019) (quoting *Abdah v. Bush*, 2008 WL 114872, at *1 n.2 (D.D.C. Jan. 9, 2008)); *see, e.g.*, *Husayn v. Austin*, 2024 WL 4443740, at *24 (D.D.C. Oct. 8, 2024) (denying relief demanded in motion without an explanation of the legal basis for the relief in the attached brief); *Kight v. Crunchy Tobacco, Inc.*, 2025 WL 1094214, at *4 (D.D.C. Apr. 11, 2025) (similar); *NAWA USA, Inc. v. Bottler*, 2007 WL 9760472, at *1 (D.D.C. Feb. 26, 2007) (similar); *see also In re Hunt*, 2017 WL 6514686, at *1 (C.D. Cal. July 5, 2017) (denying under Federal Rule 7(b)(1)(B) an "incomprehensible" motion filed by "vexatious" pro se litigant).

Anyway, any other sources of authority mentioned in Plaintiff's brief likely would not aid Plaintiff even if properly raised as arguments for relief. For example, the lack of a basis for Judge Friedman or Judge Mehta to disqualify themselves under the standards set forth in Section 455 necessarily means Plaintiff's due process rights were not violated by their presiding over his cases, because the statutory standards are more stringent than the constitutional ones. *S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.*, 740 F.2d 980, 990 n.9 (D.C. Cir. 1984). And applicable judicial ethics rules do not suggest any impropriety in this situation. *See* Section II(A)(3) *supra*.

Plaintiff also briefly invokes this Court's "inherent authority" in connection with his position that the Court should (1) vacate all rulings in *Prunty I* and *Prunty II*; (2) sanction all defendants and their legal counsel for "violating their Duty to stop Fraud Upon The Court"; (3) award plaintiff "a New Hearing and Copyright Action"; (4) award Plaintiff restitution; and (5) award Plaintiff punitive and compensatory damages. *See* ECF No. 38 (Pl.'s Refiled 144/455 Mot.) at 6-7. There is no basis to grant any of these requests.

The inherent power to impose sanctions on litigants, "incidental to all Courts," is exercised with "caution" and "restraint." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991); *see also*

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion."); *Husayn*, 2024 WL 4443740, at *14. To warrant sanctions under a court's inherent powers, a party must have engaged in misconduct "affect[ing] the court's ability to manage its own affairs so as to achieve the orderly and expeditious disposition of cases." *United States v. Pope*, 2025 WL 2105571, at *2 (D.D.C. July 28, 2025) (cleaned up). A finding of bad faith is required. *Priority One Servs., Inc. v. W & T Travel Servs., LLC*, 987 F. Supp. 2d 1, 4-5 (D.D.C. 2013). Claims of bad faith that provide "no supporting detail" or that are merely "conclusory allegations" do not suffice. *HRH Servs., LLC, et al. v. Travelers Indem. Co.*, 2024 WL 5246521, at *4 (D.D.C. Dec. 30, 2024) (citing *Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023)).

Because Plaintiff fails to provide any evidence of misconduct beyond unsupported and conclusory accusations, these claims for relief also fail. Plaintiff has failed to plausibly allege "fraud upon the court" or any other misconduct by any Judge or Defendant. *See* Section II(A)(3) *supra*; ECF No. 7-1 (Jenner MTD Br.) at 18; ECF No. 19-1 (UMG MTD Br.) at 15. Because Plaintiff has failed to provide evidence of misconduct affecting the administration of justice, he has provided no grounds for the Court to impose sanctions. *See, e.g.*, *Mack v. Food Lion, LLC*, 791 F. Supp. 3d 632, 644 (E.D.N.C. 2025) (plaintiff failed to plausibly allege "any sort of procedural misconduct," precluding invocation of court's inherent powers to award sanctions), *report and recommendation adopted*, 2025 WL 1934524 (E.D.N.C. July 15, 2025); *see also* ECF No. 25 (Jenner Omnibus Opp.) at 34-36.

3. <u>To The Extent Plaintiff's Motion Seeks Recusal Of Judges Friedman And Mehta, There Is No Legal Basis For That Relief.</u>

Plaintiff's Motion also suggests that Judges Friedman and Mehta should be recused. *See* ECF No. 38-1 (Pl.'s 144/455 Aff.) at 1. Assuming Plaintiff means that these Judges should be

recused from the prior lawsuits over which they presided, Plaintiff does not provide any explanation or support for the proposition that he may move this Court to retroactively recuse separate judges in separate cases that are long closed.[15] And any such request has been waived. Section 455 "requires that the movant first present a motion for recusal to the judge whose impartiality is at issue," so that the judge in question is given an opportunity to respond. *Clay v. Brown, Hopkins & Stambaugh*, 892 F. Supp. 11, 13 (D.D.C. 1995); *see also United States v. Balistrieri*, 779 F.2d 1191, 1202-03 (7th Cir. 1985), *overruled in part on other grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016). To the extent Plaintiff is trying to bypass presenting a recusal motion to Judges Friedman and Mehta, the Motion is improper and the requests for their disqualification should be denied. *See Clay*, 892 F. Supp. at 13.

In any event, Plaintiff's Motion does not include anything close to the requisite factual allegations to justify disqualification of Judges Friedman or Mehta. *See* Section II(A)(3) *supra*.

**CONCLUSION**

Plaintiff continues to "clog the Court's docket with meritless motions." *Prunty I*, 699 F. Supp. 2d at 20 (cleaned up). Responding to Plaintiff's motions has become a substantial burden upon Defendants. To ensure the efficient administration of justice, this Court should deny Plaintiff's Motion, dismiss the Amended Complaint, and enjoin Plaintiff from further litigating these long-settled claims.

---

[15] Counsel is aware of no authority to support that request. *Cf. United States v. Choi*, 818 F. Supp. 2d 79, 85 (D.D.C. 2011) (district courts cannot issue writs of mandamus to or otherwise order action by other courts).

Dated: January 30, 2026

Respectfully submitted,

/s/ *Alex S. Trepp*

Alex S. Trepp (#1031036)
JENNER & BLOCK LLP
1099 New York Ave., NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6000
Fax: (202) 639-6066
ATrepp@jenner.com

*Attorney for Defendant Jenner & Block LLP*

/s/ *Matthew J. Oppenheim*

Matthew J. Oppenheim (#443698)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Tel: (202) 480-2999
matt@oandzlaw.com

*Attorney for Defendant UMG Recordings, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2026 , I filed the foregoing document with the Clerk of Court for the United States District Court for the District of Columbia using the court's CM/ECF filing system. Additionally, on the same day, I served a copy of the foregoing document on Plaintiff Robert R. Prunty via email and pursuant to the parties' agreement regarding service.

*/s/ Alex S. Trepp*

Alex S. Trepp (#1031036)
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
Tel: (202) 639-6000
Fax: (202) 639-6066
ATrepp@jenner.com